Owl Electric Co., Inc., Plaintiff-Appellee, Cross-Appellant, *v.* United States Fidelity & Guaranty Company *et al.,* Defendants-Appellants, Cross-Appellees.

(No. 53990;

First District—February 24, 1971.

Martin, Drucker & Karcazes, of Chicago, (George D. Karcazes, of counsel,) for appellants.

Van Duzer, Gershon, Jordan & Peterson, of Chicago, (John B. Van Duzer and Horace W. Jordan, of counsel,) for appellee.

Mr. JUSTICE BURMAN deliverd the opinion of the court:

The Owl Electric Co., Inc. (hereafter Owl) instituted this proceeding in order to obtain a judicial declaration that a Workmen's Compensation Insurance Policy issued to it on December 31, 1966, was in full force and effect on August 5, 1967, when one of its employees sustained a fatal injury. The insurer, the United States Fidelity and Guaranty Co. (hereafter U.S.F. & G.) denied coverage and alleged affirmatively that the policy had been cancelled for non-payment of premium in accordance with the terms of the policy by the mailing of a notice of cancellation on June 26, 1967. After a trial without a jury, the Court specifically found (1) that the purported cancellation by U.S.F. & G. was null and void because Owl had made all premium payments required under the policy and (2) that U.S. F. & G. did mail a notice of cancellation to Owl on June 26, 1967. The Court declared that the Workmen's Compensation Insurance Policy was in full force and effect on the date of the fatal injury and ordered (1) that U.S.F. & G. defend Owl in proceedings before the Industrial Commission arising out of the accident and (2) that U.S.F. & G. satisfy any award rendered by the Commission against Owl in those proceedings within the limits of the policy. U.S.F. & G. has taken this appeal from the judgment and Owl has taken a cross

appeal from the finding in the judgment that a notice of cancellation was mailed by U.S.F. & G. on June 26, 1967.

In 1965, Owl sought a Workmen's Compensation Insurance Policy from Robert Green, an insurance broker associated with the Lizzio Insurance Agency. Green placed Owl's business with the Interstate Insurance Agency (hereafter Interstate) which at that time was a general agent for U.S.F. & G. On April 29, 1965, U.S.F. & G. issued a one year policy to Owl. The amount of the premium due under the policy was dependent upon the extent of Owl's business operations during the course of the year. Owl, consequently made an initial deposit with U.S.F. & G. of $977.00, based on an estimated bill, and then U.S.F. & G. conducted an audit and adjusted the premium in accordance with the amount of work actually done by Owl. After a final audit, Owl received a credit of $239.41. In April of 1966, Owl renewed the policy for another year and had an $800.00 deposit made which was received by U.S.F. & G. In November of 1966, U.S.F. & G. conducted a six month audit of Owl's business and found that the earned premium was $234.80. Owl requested that its Workmen's Compensation Insurance Policy be placed on a calendar year basis. Accordingly, the April 1966 policy was cancelled and a new policy was issued which was to be effective from December 31, 1966, to December 31, 1967. A subsequent audit by U.S.F. & G. found that Owl had a credit of $693.82 on the April 1966 policy.

John Paul Bartzak, Owl's president, testified that in February or March of 1967, Robert Green asked him for a payment on the newly issued calendar year policy, but that Green agreed to wait for a payment until after U.S.F. & G. conducted an audit and determined the credit which was due to Owl. He further testified that Owl never received a report of an audit or a bill for premiums from U.S.F. & G. His first notice of the cancellation of the policy was a letter from the Industrial Commission dated September 8, 1967, over a month after the August 5, 1967 accident.

Robert H. Jasker testified that he was a general superintendent for casualty at U.S.F. & G. and that the cancellation division was under his jurisdiction in June of 1967. He identified a memorandum received by U.S.F. & G. from its general agent, Interstate, which requested U.S.F. & G. to cancel for non-payment of premium the Workmen's Compensation Insurance Policy issued to Owl. He then testified that U.S.F. & G. always mailed out notices of cancellation when its agents requested a cancellation of a policy for non-payment of premium. He testified further that a notice of cancellation of Owl's policy was prepared under his direction and supervision. He identified and the Court received into evidence (1)

a carbon copy of the notice of cancellation addressed to Owl, (2) a United States Post Office certificate of mailing which indicated that the Post Office had received for mailing from U.S.F. & G., on June 26, 1967, a letter addressed to Owl, and (3) a photostat of a notice of cancellation sent to the Industrial Commission.

Jasker reviewed the premium payment history of the Workmen's Compensation Insurance Policies issued to Owl and he admitted that according to the results of the final audit in July of 1967 U.S.F. & G. had, on the date of the cancellation, $500.00 in excess of the earned premium on the policy. He explained that the credit was due to Interstate and that he did not know how much was due to Owl.

Robert Green testified that he was a partner in the Mid-World Insurance Agency (formerly named Lizzio Insurance Agency) and that he had placed Owl's insurance with Interstate. He identified the signature of Roy J. Lizzio on a letter to Interstate which requested it to have Owl's policy cancelled for non-payment of premium. He stated that it was Lizzio and not he who collected premium payments. He further testified that his partnership with Lizzio was in the process of dissolution and that he was unable to find the records relating to Owl's account. At no point did he deny the existence of the agreement with Bartzak to postpone payment of the premium until after the audit by U.S.F. & G.

U.S.F. & G. did not collect its premiums directly from Owl. It dealt only with its general agents and with its related and subsidiary financing corporation, Delmar. When U.S.F. & G. issued a policy or made a refund, it collected the premium or paid the refund by debiting or crediting the account of its general agents or the account of its financing company. At the end of a month it would submit a statement and its accounts would then be balanced. U.S.F. & G.'s general agent, Interstate, dealt with Lizzio and Green and not with Owl. When Green placed Owl's insurance with Interstate, the later firm collected the premium by debiting the account of Lizzio and Green. It was Lizzio and Green who would, in fact, collect the premium from Owl.

■■ We first consider Owl's contention that it was contrary to the manifest weight of the evidence for the Court to find that U.S.F. & G. mailed a notice of cancellation on June 26, 1967. Owl argues that none of the evidence presented to prove the mailing of the notice related to the actual mailing of the cancellation notice. The evidence related only to the "custom" of U.S.F. & G. in handling notices of cancellation and to the procedure followed "in the ordinary course of business." Proof that a notice was properly filled out, coupled with evidence of an office custom with reference to the mailing of notices is sufficient to constitute proof of the mailing of the notice if there is some proof or corrobating

circumstance sufficient to establish the fact that the custom was followed in a particular case. (See *State Bank of East Moline v. Standaert*, 335 Ill.App. 519, 82 N.E.2d 393.) We have examined the record and believe that the carbon copy of the notice was sufficient to establish that the notice was properly filled out and that the United States Post Office certificate of mailing is sufficient corroboration that the office custom of mailing the notices of cancellation was followed in this particular case. We, therefore, affirm the above finding of the Court.

The trial judge found, however, that all premium payments required by U.S.F. & G. had been paid by Owl, and that the purported cancellation of the policy for non-payment of premium was null and void. U.S.F. & G. contends that by the terms of its policy, either party could cancel the policy for any reason upon the mailing of a proper notice. It argues that the issue of payment of premiums is immaterial to the issue involved. It additionally contends that the finding is against the manifest weight of the evidence.

In *Jablonski v. Washington County Mut. Fire Ins. Co.*, 13 Ill.App.2d 499, 142 N.E.2d 170, relied upon by U.S.F. & G., a fire insurance company cancelled a policy because of the insured's failure to pay a special assessment required by the policy. It was contended, by the insured, that the cancellation was ineffective because the assessment was illegal. The policy involved there contained the same provisions of cancellation as appears here. The Appellate Court reversed the finding for the insured on the ground that the right to cancel was unconditional under the terms of the policy.

■■ The circumstances in the case at bar differ markedly from those in *Jablonski*. There was no agreement to waive the payment of the special assessment. Owl has complied with all the terms and conditions of the policy. At the time of cancellation U.S.F. & G. had on deposit more than the earned premium. After Green requested payment in February or March of 1967, it was agreed by Bartzak and Green that Owl would not have to pay a premium until after U.S.F. & G. conducted its final audit on the April 1966 policy. (The Audit found that a credit was due of $693.82). Owl relied on this agreement and had no reason to believe that its insurance policy would be cancelled for non-payment before it received the results of the audit. The cancellation was initiated by Green's partner, Lizzio, in violation of this agreement, but Lizzio did not testify at the trial and all of Green's and Lizzio's records relating to Owl were missing. The evidence overwhelmingly establishes that the policy was cancelled for non-payment. Lizzio's letter to Interstate requested a cancellation for non-payment, and Interstate's memorandum to U.S.F. & G. requested a cancellation for non-payment. U.S.F. & G. denied in its

answer that the premium had been paid and alleged affirmatively that the policy was properly cancelled for nonpayment. The evidence clearly establishes that (1) U.S.F. & G. elected to cancel the policy on the erroneous assumption of the non-payment of premium by Owl, and (2) that Owl was lulled into belief that no action would be taken until U.S.F. & G. conducted its audit of the Spring 1966 policy. We are of the opinion that the proofs support the judgment *in toto* and that the findings are not against the manifest weight of the evidence.

For the reasons given the judgment is affirmed.

Judgment affirmed.

ADESKO, P. J., and DIERINGER, J., concur.