## Arkansas Sweet Potato Growers' Exchange, Defendant in Error, v. Wignall-Moore Company, Plaintiff in Error.

### Gen. No. 32,416.

Opinion filed May 14, 1928.

Huff & Cook, for plaintiff in error; Zwemer & Casey, of counsel.

Stewart Reed Brown, for defendant in error.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against defendant to recover $1,485.18, claimed to be due on account of the

failure of defendant to accept and pay for four carloads of potatoes which plaintiff had sold to it. At the conclusion of the trial the jury found the issues against defendant and assessed plaintiff's damages at $1,452.18, judgment was entered on the verdict and defendant has sued out a writ of error to this court. We think we ought to say that counsel who now represent defendant were not counsel on the trial.

It appears from the record that plaintiff is an association of potato growers in Arkansas; that on June 3, 1925, it sold four carloads of potatoes, which were loaded on the cars in Arkansas, to the defendant in Chicago. The potatoes were sold as "United States No. 1" grade and the price was $2.75 per hundred weight f. o. b. shipping point. The cars arrived in Chicago about June 8, 1925, but defendant refused to accept them and wired plaintiff to this effect, stating that the potatoes were "irregular too large percentage small and undersized two cars look rather stale probably too long in transit during the extreme hot weather," and offering to take the four cars for $3.00 per hundred weight delivered in Chicago. Plaintiff refused this offer and had the potatoes inspected by the Produce Reporter Company of Chicago, an association to which persons engaged in the potato business, including plaintiff, belong. Defendant having refused to accept the potatoes, plaintiff had the Produce Reporter Company, which had inspected the four cars, sell them. In the meantime the market dropped and plaintiff did not receive as much for the potatoes as it would had they been accepted and paid for by defendant in accordance with the terms of sale. The amount of the judgment is for the damages thus sustained by plaintiff.

Defendant in its affidavit of merits admitted that it had purchased the four carloads of potatoes "f. o. b. shipping point" for $2.75 per hundred weight; that it did not wish to receive the potatoes in Chicago but at

shipping point in Arkansas; that plaintiff billed the four cars to itself at Chicago and sent the bill of lading with drafts attached to a Chicago bank so that defendant might obtain the potatoes when the drafts were paid. The affidavit further set up that the potatoes were to be "U. S. grade No. 1," and that they were not of that grade but were rotted and decayed.

Four witnesses testified by deposition in Arkansas, and other testimony is to the effect that the potatoes were "Red Triumphs" of good quality U. S. grade No. 1. One of these witnesses testified that plaintiff had received through the mails, from the Produce Reporter Company, four written reports made by that company covering the four cars of potatoes, the reports showing that the potatoes had been inspected in Chicago by the Produce Reporter Company, for plaintiff. These four reports were made a part of the deposition and returned to the clerk of the municipal court of Chicago. Plaintiff and defendant were represented by counsel at the taking of the depositions and the record discloses that when these four documents were offered by plaintiff no objection was made to them on the ground that they were incompetent or that such evidence was hearsay. The record discloses that on the trial of the case when these four documents were offered, counsel for defendant objected "to the introduction of the four inspection reports herein introduced for the reason that if competent at all, this witness is not the witness to testify. to these inspector's reports." The objection was overruled and the documents received in evidence. Some of plaintiff's witnesses whose depositions were taken in Arkansas testified in explanation of the meaning of some of the terms used in the reports, as did also witnesses produced by the plaintiff on the trial. Defendant also called witnesses who gave testimony in explanation of the four documents.

Defendant offered evidence to the effect that it also had an inspection made of the four carloads and the written reports of the inspectors were offered in evidence, but the men who made the reports were not produced, and testimony was also given to the jury in explanation of these reports. The testimony offered on behalf of defendant was to the effect that the potatoes were not U. S. grade No. 1, but that too many of them were under size to be of that grade. On behalf of defendant a written statement prepared by C. G. Wignall, who appears to have been the man who had the handling of these potatoes, was read to the jury as evidence, Mr. Wignall being too ill to appear in court. The statement shows that when the four cars arrived Wignall examined some of them and his statement says that "the potatoes were very poorly graded, there being scarcely nothing in the car that would be larger than a minimum No. 1''; that some of the sacks were marked No. 2; that the bags were uneven in amount, some weighing from 60 to 130 pounds; that he examined two of the carloads but did not inspect the other two but received a report of an inspection made by inspectors employed by defendant; that he recollected that the Produce Reporter Company had inspected the potatoes for plaintiff and that "any loss was due on account of poor grading and second-hand bags which were used." A consideration of all the evidence offered on behalf of defendant shows that the potatoes were rejected because, as defendant contends, plaintiff did not grade them properly, that they were not U. S. No. 1 grade, and that they were in second-hand bags which were uneven in size.

It is clear from a consideration of all the evidence that the material point in controversy was whether the potatoes were grade U. S. No. 1, and we think the finding of the jury in favor of the plaintiff, to the effect that the potatoes were of that grade, is sustained by the evidence. It is certain that we would not be

warranted in disturbing such finding on the ground that the finding is against the manifest weight of the evidence.

But defendant contends that improper evidence was received over its objection; that the four written documents purporting to be the appraiser's reports, as made by the Produce Reporter Company, were inadmissible because they were hearsay evidence, and that the evidence was insufficient to prove that the documents were the reports of the inspectors of the four cars. Although practically all the argument made by defendant is concerning these documents, yet we are unable to find anything in the abstract concerning these reports. We might therefore disregard the contention made because under our practice the party bringing a case to this court must file a sufficient abstract to present the matters of which he complains. But we are of the opinion that there is no merit in the objection. When these documents were offered on the taking of the depositions in Arkansas, they were received without objection, and the objection on the trial was that if the documents were "competent at all, this witness is not the witness to testify to these inspectors' reports." Defendant having been represented at the taking of the depositions, it was its duty to interpose objections to evidence offered although such evidence was hearsay. Hearsay evidence is competent if not objected to. 16 Cyc. 1194–5; *Pittman v. Gaty,* 10 Ill. (5 Gilm.) 186; *Holder v. Cannon Mfg. Co.,* 135 N. C. 392; *State Bank v. Wooddy,* 10 Ark. 638; *Nunn v. Jordan,* 31 Wash. 506.

Nor do we think there was any error in the testimony of the witnesses by which it was sought to explain to the jury the written reports made by the inspectors. If the reports were not intelligible to the jury, it was proper for one qualified to give testimony in explanation of them. *Kavale v. Morton Salt Co.,* 329 Ill. 445.

A further complaint is made that the court permitted plaintiff to offer evidence as to terms used in the correspondence passing between the parties leading up to the purchase and sale of the potatoes, such as "cars rolling" and "f. o. b." We think this evidence was immaterial. It is obvious that such terms are understood by all. Moreover, this alleged error was obviated by an instruction given by the court.

Upon a consideration of the entire record we are of the opinion that the issue involved was very simple and easily understood by the jury, and that any error that might have ocurred ought not to work a reversal of the judgment.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.