THE BUCKINGHAM CORPORATION, Plaintiff-Appellee, *v.* EWING LIQUORS Co., d/b/a FOREMOST LIQUORS, Defendant-Appellant.

(No. 57927;

First District (2nd Division)—November 6, 1973

840

Allen H. Schultz, of Chicago, for appellant.

Morton Siegel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Ewing Liquors Co., appeals from an order granting plaintiff a permanent injunction. The trial court found that plaintiff's Cutty Sark scotch whiskey is sold in Illinois pursuant to a valid fair trade agreement, and that on December 13, 1971, defendant knowingly sold Cutty Sark scotch whiskey at a price below plaintiff's fair trade price in contravention of the Illinois Fair Trade Act.[1] The order permanently enjoined defendant from advertising, offering for sale or selling plaintiff's products in Illinois at prices less than those stipulated by plaintiff from time to time pursuant to the fair trade agreement. Plaintiff's fair traded products and their current prices were also set forth in the order.

On appeal defendant contends that:

1. Plaintiff failed to prove the execution of the fair trade agreement;

2. Plaintiff failed to prove knowledge by defendant of its fair trade prices;

---

[1] Ill. Rev. Stat. 1971, ch. 121½, par. 188 et seq.

3. Plaintiff failed to prove that its products were in fair and open competition;
4. Plaintiff's fair trade agreement is invalid in that it provides for minimum prices, not stipulated prices;
5. Plaintiff, a foreign corporation, cannot maintain a cause of action in Illinois because it has failed to obtain a certificate of authority to do business in Illinois as required by Illinois Revised Statutes, 1971, ch. 32, pars. 157.102, 157.125; and
6. The injunction order is invalid in that it lacks specificity.

Plaintiff filed a verified complaint alleging that Cutty Sark scotch whiskey is in free and open competition in Illinois; that plaintiff imports and distributes this product to wholesale distributors in Illinois; that plaintiff has entered into fair trade contracts in Illinois wherein it is provided that Cutty Sark shall not be sold, advertised or offered for sale at prices below the prices stipulated by plaintiff; that defendant had due notice of the stipulated prices; that on December 13, 1971 defendant sold a fifth of Cutty Sark scotch whiskey at a price of $5.99 whereas the fair trade price was $6.59; and that defendant is continuing knowingly to sell Cutty Sark scotch whiskey at prices below the fair trade prices.[2]

Defendant filed a verified answer denying plaintiff's material allegations, and raising various affirmative defenses. Plaintiff then filed a reply to defendant's answer, and attached an affidavit of Ted Herbik, an employee of Buckingham Distributors, a letter from plaintiff to all Illinois liquor retailers informing them of amended fair trade prices effective December 1, 1969, and a page from the December, 1969 issue of the *Illinois Beverage Journal* reproducing plaintiff's letter to Illinois retailers.

At the hearing for a temporary injunction, the parties stipulated that they would proceed with a hearing for a permanent injunction. A private detective testified that on December 13, 1971 he entered defendant's store and purchased a fifth of Cutty Sark scotch whiskey at a price of $5.99. He testified that the fair trade price schedule which he received from plaintiff's attorney listed the fair trade price as $6.59 per fifth. His report was introduced into evidence.

The managing editor of the *Illinois Beverage Journal* testified that the *Journal* is a trade publication which advertises, lists trade prices and publishes news of interest in the industry. He stated that the *Journal* conducted a mailing of price schedules for Buckingham Corporation in

---

[2] Defendant did not contract with plaintiff to sell plaintiff's products at fair trade prices. However, under the Illinois Fair Trade Act, defendant is a "nonsigner" (one who is not a party to a fair trade agreement), and is also prohibited from "willfully and knowingly advertising, offering for sale or selling" plaintiff's products at less than plaintiff's stipulated prices. Ill. Rev. Stat. 1971, ch. 121½, par. 189; *Kinsey Distilling Sales Co. v. Foremost Liquor Stores, Inc.*, 15 Ill.2d 182, 154 N.E.2d 290.

November, 1969, and that defendant was on that mailing list. The witness admitted on cross-examination that he had no personal knowledge of whether defendant received the letter, or indeed of whether in fact the letter had actually been mailed to defendant, because the mailing was handled by the *Journals* mailing service. However, the witness did receive an attestation from the mailing service that the mailing was being conducted. On redirect examination the witness stated that the mailing service handled 4 or 5 mailings per month other than the *Journal*, and had been reliable for 17 years. In addition, defendant was a subscriber to the *Journal* in December, 1969, and plaintiff's price schedule was reproduced in that issue of the *Journal*. Reproductions of the price list as it was mailed, and as it was reproduced in the *Journal*, were introduced into evidence.

Evidence of the fair trade agreement was then adduced. A Chicago liquor retailer acknowledged his signature on a fair trade agreement dated July 30, 1969 between himself and Buckingham Corporation. Ted Herbik, a marketing director of Buckingham Distributors, testified that he recognized the signature of William Gallagan, plaintiff's vice-president, and he identified Gallagan's signature on the July 30, 1969 agreement. He stated that he was familiar with Gallagan's signature because he had received correspondence from him in the past; he admitted that he had never seen Gallagan sign his name. The fair trade agreement was then introduced into evidence.

Herbik also testified that he conducted marketing services for Cutty Sark scotch whiskey, and that he knew the fair trade price of Cutty Sark to be $6.59 per fifth. In addition he testified to the existence in Illinois of competing scotches and to the extensive promotional campaign maintained by plaintiff. Finally, Herbik testified that Buckingham Distributors is the merchandising arm of Buckingham Corporation, and that he arranges Cutty Sark displays in retail stores. The purpose of the displays is to influence and motivate consumers to purchase Cutty Sark scotch whiskey. Plaintiff then rested its case, and a motion for a finding for defendant was denied. Defendant introduced no evidence.

Defendant contends that plaintiff failed to adequately prove an essential element of its cause of action—the existence of a fair trade agreement. Defendant's answer demanded strict proof of all allegations of plaintiff's complaint, and one of defendant's affirmative defenses stated that defendant had no knowledge of plaintiff's alleged fair trade agreement. Plaintiff was therefore required to prove the execution, existence and authenticity of the agreement before it was admittd into evidence. *Dick v. Halun*, 344 Ill. 163, 176 N.E. 440; *Crosier v. Crosier*, 201 Ill.App. 406; 18 I.L.P. Evidence, §§ 234, 235.

■■ It has long been the rule in Illinois that handwriting may be proved by a witness's show of familiarity with it. This familiarity may be gained from having seen the party actually write, or from having been acquainted with the handwriting in the course of business dealings. (*Riggs v. Powell*, 142 Ill. 453; Gard, Illinois Evidence Manual, Rule 316; Cleary, Evidence (2d Ed.) § 11.14.) The extent of the knowledge of the witness goes to the weight to be given his opinion.

■■ The evidence adduced as to the execution and authenticity of the fair trade agreement was the testimony of the liquor retailer and plaintiff's employee, Herbik. The retailer identified his signature on the agreement dated July 30, 1969; he was not asked whether he saw plaintiff's vice-president, William Gallagan, sign the agreement. Herbik testified on direct examination that he had personal knowledge of Gallagan's signature from having seen it on documents sent to him in the regular course of business. Upon the objection of defendant's counsel, his testimony that Gallagan also had told him that he had signed the agreement was stricken from the record as hearsay. On cross-examination, however, the following colloquy occurred:

"Defendant's Counsel: So, your testimony as to Mr. Gallagan's signature is the result of what he said in Siegel's office while you were present, is that right?

Witness: That is right.

Defendant's Counsel: Which I objected to. You heard me object to that, didn't you?

Witness: I have no objection of your objections."

It is clear that, although Herbik's hearsay testimony was stricken from the record on direct examination, counsel for defendant allowed the same testimony to be entered into the record on his cross-examination of the witness. It is elementary that hearsay evidence is competent if not objected to. (*Town of Cicero v. Industrial Com.*, 404 Ill. 487, 89 N.E.2d 354; *Arkansas Sweet Potato Growers' Exchange v. Wignall-Moore Co.*, 249 Ill.App. 34.) Therefore, this testimony was competent evidence of Herbik's knowledge of Gallagan's signature in addition to the testimony regarding Herbik having seen the signature on correspondence in the regular course of business. In any event, the trial court was in a superior position to observe and hear the witness and determine the weight to be given this testimony. (*First National Bank of Elgin v. Dierking*, 87 Ill. App.2d 4, 230 N.E.2d 520.) Therefore, we will not disturb the trial court's finding that plaintiff adequately proved the execution of the fair trade agreement.

■■ Defendant also contends that plaintiff failed to prove knowledge by defendant of the fair trade prices. From our review of the record, we

find that plaintiff failed to sufficiently prove notice to defendant of its fair trade prices. Two recent fair trade cases provide us with examples of sufficient proof of notice. In *Heublein, Inc. v. Foremost Sales Promotions, Inc.,* 14 Ill.App.3d 114, 302 N.E.2d 233, the evidence disclosed that a letter with an enclosed fair trade price schedule was sent to defendant by registered mail, and defendant's attorney acknowledged receipt of the letter. In *Taylor Wine Co. v. Foremost Sales Promotions, Inc.,* 12 Ill.App. 3d 1042, 299 N.E.2d 556, plaintiff's witness testified that, in addition to notice of prices through a trade journal and a direct mailing, he discussed the fair trade program with an officer of defendant. In the instant case, the proof of notice to defendant does not approach the quantum of proof adduced in these two cases.

■■ The evidence indicates that the managing editor of the *Illinois Beverage Journal* had no personal knowledge of the completion of the mailing of plaintiff's price schedule. No one from the *Journal's* mailing service testified to the completion of the actual mailing. Plaintiff contends that notice to defendant was proven by the testimony of the editor that plaintiff's price list was reproduced in the December, 1969 issue of the *Journal,* and that defendant was a subscriber to the *Journal* at that time. However, there was no testimony indicating that Illinois liquor retailers relied on the *Journal's* publication for notice of fair trade prices. The Illinois Fair Trade Act requires that defendant "knowingly" perform the prohibited acts. (Ill. Rev. Stat. 1971, ch. 121½, par. 189.) A presumption of mailing does not arise where a party merely shows a general business practice with reference to mailing letters, but does not offer evidence by the person charged with the duty of mailing, that the custom was followed. *Meyer v. Krug,* 298 Ill.App. 625, 19 N.E.2d 111; *State Bank of East Moline v. Standaert,* 335 Ill.App. 519, 82 N.E.2d 393.

■■ Thus, plaintiff failed to prove an essential element of its cause of action. Defendant's motion for a finding for defendant at the close of plaintiff's case should have been granted. Accordingly, we reverse the judgment of the trial court, and pursuant to Supreme Court Rule 366,[3] we hereby dissolve the permanent injunction. In view of our decision, we need not consider the remaining issues raised by defendant.

Reversed.

HAYES and DOWNING, JJ., concur.

---

[3] Ill. Rev. Stat. 1971, ch. 110A, par. 366(5)