TABOR & CO., Plaintiff-Appellee, *v.* JOHN GORENZ, d/b/a Gorenz Grain Co.,
Defendant-Appellant.

Second District (1st Division)    No. 74-438

Opinion filed November 3, 1976.

Ben Rifken and Jeff Rifken, both of Rifken & Rifken, and Richard W. Husted, all of Elgin, for appellant.

John E. Fick, of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff, Tabor & Co., sued to recover damages for the breach of alleged oral contracts under which it claimed that the defendant, John Gorenz, d/b/a Gorenz Grain Co., promised to deliver soybeans. Defendant denied the existence of the contracts and pleaded the affirmative defense of the Statute of Frauds. The jury found for the plaintiff and assessed damages in the amount of $159,352.71. Defendant appeals from the judgment entered on the verdict. He also appeals from an order assessing attorney's fees and mileage as costs arising from proceedings subsequent to the trial.

In addition to claiming that he did not contract to sell the beans to plaintiff, defendant contends that in any event the alleged oral contracts are barred under the Statute of Frauds set forth in section 2—201 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—201). In this regard plaintiff relies on section 2—201(2) of the Uniform Commercial Code which provides:

"(2) Between merchants if within a reasonable time a writing in

> confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements * * *."

Defendant denies receipt of confirmations and contends that plaintiff failed to prove receipt either by direct proof or with the aid of the presumption of receipt based upon evidence of proper mailing. Plaintiff contends that the proof of mailing, based upon customary business practices which had resulted in actual notice to defendant in contemporary transactions, plus proof of circumstances tending to show defendant's knowledge of the contents of the disputed confirmations is sufficient to support the judgment by its manifest weight.

Tabor has its principal place of business at Decatur, with branch offices in De Kalb and a barge loading station at La Salle, all in Illinois. It produced testimony by its employees that Gorenz, a grain dealer and elevator operator, in a telephone conversation with a merchandiser at De Kalb on October 3, 1972, orally agreed to sell and that Tabor agreed to buy 40,000 bushels of soybeans at $3.46 per bushel for shipment in March 1973, to be delivered at La Salle; that on September 27, 1972, Gorenz orally agreed to sell and Tabor agreed to buy 20,000 bushels of soybeans for delivery in July 1973, at La Salle for $3.50½ per bushel; that Gorenz repudiated the agreements on April 13, 1973, denying that they existed; and that Tabor replaced the soybeans at a market price of $6.50 per bushel on April 13 and 16, suffering net damages as found by the jury.

The plaintiff also proved that on March 5, 1973, the defendant sold one load of soybeans containing 938.83 bushels and was sent a settlement sheet which showed a contract price of $3.46 per bushel to be credited on the October 3 contract. The load was also shown to have been credited in Tabor's records as a partial delivery on the October 3 contract. Witnesses for Tabor testified that Gorenz, during various communications between April 10 and April 13, 1973, denied for the first time the existence of the contracts for March and July deliveries. Proof was also adduced that the price of soybeans had advanced to between $6.50 and $7 per bushel by the middle of April 1973.

Frederick Lawton, the Tabor employee at De Kalb, testified to the making of the oral contract with Gorenz. He testified that he knew Gorenz's voice from previous dealings. He also testified to the customary procedure which was followed in large grain transactions, those over 15,000-20,000 bushels. He would write the transaction into his purchase record while the phone conversation with the seller was going on and would simultaneously be on the telephone with the Decatur office to get approval. It was further established through Lawton and other Tabor employees in the Decatur office that the Tabor employee answering the

phone in Decatur then makes a note of the transaction on a similar buyer's card; that when a buyer's card in Decatur is filled with transactions, the card is placed on the secretary's desk; that the secretary then types up a confirmation of the transaction on a form which is designed to be slipped into a window envelope; that a Decatur merchandiser then checks the typed confirmation form against the notes on the buyer's card, signs the confirmation on behalf of Tabor & Co., and returns it to the secretary; that the confirmation form consists of a white original, a green copy, and a yellow copy; that on the same day the white original is sent to the customer in a window envelope with the company's return address printed on it; that the green copy is kept in the Decatur office, and the yellow copy is sent to the point of delivery; and that subsequent to this someone holding the green copy in Decatur or someone holding the yellow copy at the delivery point telephones the De Kalb office where a note is made of the number on the confirmation form in a particular column on the same card on which the transaction was originally recorded. Documents showing that these procedures were followed in the case of the disputed contracts were introduced. However, the white originals were not produced by Gorenz. Other documents received by the defendant concerning contracts for the purchase of corn, entered into on September 15, 1972, and October 5, 1972, as to which the white original confirmations were produced by the defendant were also introduced. There was further evidence that no mail directed to Gorenz had been returned to the Tabor office around the time in question. There was testimony that the yellow copies of both the soybean and corn confirmations were received by mail in La Salle.

Lawton further testified that about February 20, 1973, he began to talk to Gorenz about shipping arrangements for the soybeans; that Gorenz said in one conversation that he would do his best to start delivering beans "on that contract" right after the first of March; that the witness had many further talks with Gorenz in March relating to both corn and soybean delivery arrangements; that he arranged for Tabor to "buy back" the majority of the corn sale which was due to be delivered in March; and that Gorenz did not state at any time before April 10, 1973, that he had no contract with Tabor for beans.

The secretary in the Tabor office in Decatur who typed up the confirmations for the disputed soybean sales, as well as for the undisputed corn sales, testified that she gave the originals addressed to Gorenz to the mail clerk for inclusion in a window envelope. The customary procedure was for the mail clerk to fold and place the confirmation in the envelope. It would go through a machine which sealed the envelope and stamped it. It then would be placed in a leather pouch which the mail clerk carried to

the post office daily. The mail clerk, however, was not produced or identified, but it was stated that the company practice was to hire high school students to do this work.

David Porter, a Tabor employee at Decatur, testified that on behalf of Tabor he entered into future transactions for the sale of soybeans on the Chicago Board of Trade on September 27, 1972, which were tied directly into the purchase of the 20,000 bushels of soybeans from Gorenz on that same date. He also testified that he wrote to Gorenz on March 20, 1973, with reference to the settlement of the corn contract and also expressed concern because Gorenz was late on his bean contract, but that Gorenz did not respond. He said that on April 7, 1973, while he was working on shipping schedules for the La Salle terminal, he called Gorenz at a number he received through information and that a voice answered, "This is Mr. Gorenz." The witness said that in the conversation Gorenz asked him how many soybeans he owed on the March contract and that he gave him the computation but recalled no response from Gorenz.

Tabor called Gorenz as an adverse witness. Gorenz conceded that he had received written confirmations of his corn sales to Tabor in September and October 1972, but denied making the oral contracts to sell soybeans and denied receiving any confirmations of soybean sales. Gorenz admitted that he had delivered one load of soybeans consisting of 938.83 bushels to Tabor on March 5, 1973, at the price of $3.46 per bushel which was the same price listed for March delivery on the October 3 confirmation. He, however, testified that he was intending to make a spot delivery of the soybeans denying that he had a contract to do so. He said he did it, "Just to be good hearted," and claimed that he was promised 10¢ over the market price which was then over $6. He said he did not notice the reference to the contract or the price, both of which appeared on the settlement sheet he received enclosed with the March 20 letter from Porter. He also conceded that on "spot sales" it was customary to be paid within a week of delivery, but that he was not paid and later found that they had taken it off the corn crop contract settlement. He said he didn't pay any attention to Porter's reference to the contract in the March 20, 1973, letter from Tabor because he didn't have a contract.

The examination of Gorenz also produced a great number of discrepancies between his sworn depositions and his trial testimony. Also, Gorenz had denied in depositions that he received various correspondence such as settlement sheets and corn confirmations which he later produced at trial in response to discovery motions. In a number of instances Gorenz's memory was shown to be unreliable. It was also established in Gorenz's testimony that he kept incomplete records of his grain sales.

The defendant contends that the plaintiff failed to prove receipt of the

soybean confirmations by any competent evidence. Essentially he argues that upon his denial of the oral contracts and his denial of receipt of the written confirmations, Tabor was required to prove the mailing by producing the direct testimony of the person who claimed to have mailed the letters. He argues that the presumption of receipt upon proper mailing could not be relied on in this case because of inadequate proof of mailing and that in absence of proof tending to show actual receipt or a proper mailing, the jury should not have been permitted to infer receipt on proof of customary business practices and extraneous dealings between the parties.

We first conclude that the existence of the oral agreements was clearly proved by the manifest weight of the evidence. We further conclude that whether the confirmations necessary to satisfy the "between merchants" exception to the Statute of Frauds (Ill. Rev. Stat. 1973, ch. 26, par. 2—201(2)) were received by Gorenz presented questions of fact properly submitted to the jury, and we further conclude that the verdict of the jury on this issue was not against the manifest weight of the evidence.

Gorenz relies principally on the argument that the special Statute of Frauds contained in the Commercial Code (section 2—201(2)) requires direct evidence of mailing to create the presumption of receipt between merchants. He contends that the proof must show (1) a correctly addressed confirmation (2) properly stamped and (3) a deposit in a United States Post Office or a receptacle to which only the United States postal service has access.

■■ A letter properly addressed, stamped and mailed is presumed to have been duly received based upon the probability of delivery and the difficulty of proving receipt in any other way. (See McCormick on Evidence 807-08 (2d ed. 1972).) To be entitled to the benefit of the presumption there must be proof that the item was contained in the properly addressed envelope with adequate postage affixed and that it was deposited in the mail. (*Werdell v. Turzynski*, 128 Ill. App. 2d 139, 149 (1970).) The presumption, however, is a rebuttable one; and if rebutted, receipt becomes a question to be resolved by the trier of fact. (*Werdell v. Turzynski*, at 149.) "A presumption is essentially an inference as to the existence of one fact from the existence of some other basic fact established by the proof." *Flynn v. Vancil*, 41 Ill. 2d 236, 239 (1968); *McElroy v. Force*, 38 Ill. 2d 528, 531-32 (1968).

Defendant contends that it is insufficient to merely prove an office custom of mailing without direct proof that the procedure was followed in the particular instance. He argues that in this case the jury was impermissibly permitted to first infer from custom that the letter was properly stuffed, stamped, and deposited in the post office and then to draw an inference based upon that inference that it was received.

While it has been stated as a general proposition that a presumption cannot be based upon a presumption or an inference upon an inference (see, *e.g., Globe Accident Insurance Co. v. Gerisch,* 163 Ill. 625, 629 (1896)), the so-called rule is actually a corollary of established tests concerning the relevance of evidence to prove a given fact and in any event does not preclude the drawing of more than one inference from the same set of facts. See *Ohio Building Safety Vault Co. v. Industrial Board,* 277 Ill. 96, 109-14 (1917). See also McCormick on Evidence 820 n. 32 (2d ed. 1972); Annot., 5 A.L.R. 3d 100 (1966). See also *Hocker v. O'Klock,* 16 Ill. 2d 414, 423 (1959).

In our view the proof satisfied the established test concerning the relevance of evidence to prove the given facts and was sufficient to present a question of the fact of mailing for the jury.

■■ Proof of mailing by evidence of corroborating circumstances tending to establish the fact that the custom as to mailing has been followed in a particular case has been recognized. In *Owl Electric Co. v. U.S. Fidelity & Guaranty Co.,* 131 Ill. App. 2d 333, 336-37 (1971), the court held that proof that a notice was properly filled out together with evidence of an office custom as to mailing is sufficient to constitute proof of the mailing when there is corroborating evidence to establish the fact that the custom was followed in the particular case. In *Owl Electric* the court found sufficient corroboration of mailing from the fact that a letter had been sent to the insured by certified mail (no return receipt requested) at the time that a notice of cancellation of insurance was alleged to have been sent. See also *Chicago v. Supreme Savings & Loan Association,* 27 Ill. App. 3d 589, 592 (1975).

In the case before us, the plaintiff not only adduced proof of the office custom with regard to the preparation, addressing, stamping, and mailing of confirmations, but also showed that correctly addressed confirmation forms designed so that the address would show through a window envelope imprinted with the company's return address had been prepared in accordance with the custom.

■■ In addition, there was proof of a strong set of circumstances leading to the conclusion that Tabor & Co. did mail and Gorenz did, in fact, receive the confirmations. He admitted receiving mailings made pursuant to the same business practice close in time to the transaction in question. The disputed letters, addressed and mailed in accordance with the same practice, were not returned. (See *Gallaway v. Schied,* 73 Ill. App. 2d 116, 125 (1966); *Wakenight v. West,* 217 Ill. App. 199, 202 (1920).) Gorenz failed to complain about the load of soybeans delivered in March being credited at the low contract price for a considerable time and made no complaint until after his denial of the existence of the contract. Copies of the confirmations were received by mail at the Tabor offices at La

Salle. In addition, defendant failed to keep complete and accurate records of his business transactions, and his personal denials of receipt were substantially impeached by contradictions in his testimony. These facts and circumstances may well have suggested to the jury that the unprecedented rise in soybean prices subsequent to the entry of the contract formed the real basis for the denial of the receipt of the confirmations.

The cases cited by defendant do not support the view that mailing may only be proved by the direct evidence of the person who performed the mailing. Defendant places principal reliance on the case of *State Bank v. Standaert*, 335 Ill. App. 519 (1948), and related cases. In *Standaert* the evidence consisted entirely of proof of custom with no reference to the purported mailing in the particular case. This was also true in *Goetz v. Country Mutual Insurance Co.*, 28 Ill. App. 3d 154, 162-63 (1975), in which this court applied the *Standaert* rule. In each case the copy of the letter was not in the proponent's files and there was no circumstantial evidence which would corroborate the fact that the letters had been mailed. *Buckingham Corp. v. Ewing Liquors Co.*, 15 Ill. App 3d 839, 844 (1973), and *Buckingham Corp. v. Caravan Liquors, Inc.*, 16 Ill. App. 3d 530, 532 (1973), involved knowledge of fair trade price schedules. In both cases the only proof of mailing was evidence of a trade journal's custom to have an independent printing service mail the copies of the schedule to the retailer. It was held that the plaintiff had failed to show the printer's general business practice with reference to mailing letters or conformance to that practice on the date in question and had consequently failed to raise even a presumption of mailing. See also *Buckingham Corp. v. Foremost Sales Promotions*, 16 Ill. App. 3d 715, 718 (1973).

■■ From all of the facts and circumstances, the receipt of confirmations sufficient to overcome the defense of the Statute of Frauds was proved by the preponderance of the evidence.

Defendant has also appealed from the trial court's judgment ordering that he pay attorney's fees and mileage to compensate plaintiff for one of his attorney's trips from Decatur to Geneva. The purpose of the trip was to obtain vacation of an order entered ex parte pursuant to defendant's motion found to have been served without adequate notice.

It appears that following the trial defendant made a motion for an extension of time in which to file an appeal bond. The motion was noticed for a hearing on December 3, 1974, and the certificate of mailing stated that the motion had been mailed on November 29, 1974. However, the envelope in which the motion was contained was postmarked December 2, 1974. The ex parte order was entered on December 3. On plaintiff's motion the order was vacated on December 9 at a hearing at which defendant's attorney did not appear. At that time on plaintiff's motion

made pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 41), the motion judge awarded the plaintiff attorney's fees and mileage expenses in the amount of $502.80. Defendant's counsel sought to vacate the December 9 order claiming that he had sent proper notice for the hearing on December 3 and had failed to appear on December 9 because of inability to locate the courtroom in which the hearing was held. This motion was also denied.

■■■ Section 41 of the Civil Practice Act related to "[a]llegations and denials, made without reasonable cause and not in good faith, and found to be untrue * * *." It states that such allegations shall subject the party pleading them to reasonable expenses and attorney's fees. The rule does not encompass a false certificate of mailing in our view. Section 41 permits sanctions against a party for conduct in the nature of malicious prosecution accomplished by false pleadings or abuse of judicial process which goes to the merits of the proceedings. Its purpose is not to provide a sanction against all violations of court rules and for all professional misconduct of an attorney. (See *Harris v. Morris*, 40 Ill. App. 3d 158, 163-64 (1976).) This is consistent with the general rule that attorney's fees and other ordinary expenses in the burdens of litigation may not be awarded to a party as an incident of his success in a legal proceeding absent express statutory authority. See *House of Vision, Inc. v. Hiyane*, 42 Ill. 2d 45, 51-52 (1969); *Murczek v. Powers Label Co.*, 31 Ill. App. 3d 939, 943 (1975).

Further, this portion of the judgment may not be sustained on the basis of plaintiff's argument in this court that section 3 of Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 3) provides authority for the imposition of the sanctions. Section 3 gives the supreme court authority to make rules for the assessment of attorney's fees against an offending party for violation of the Civil Practice Act or Supreme Court Rules. It does not itself give any additional authority to impose the sanction.

For the reasons stated, the judgment based upon the jury verdict is affirmed. The judgment assessing costs and expenses is reversed.

■■ We have also taken with the case defendant's motion to tax costs against the plaintiff for the preparation of excerpts from the record designated by the plaintiff. Without reaching the merits of the question, we deny the motion pursuant to the provisions of Supreme Court Rule 342(h) (Ill. Rev. Stat. 1973, ch. 110A, par. 342(h)) for the failure of the defendant-appellant to advise the plaintiff-appellee in writing within seven days of the parts of the record designated which were allegedly unnecessary for the determination of the issues presented by the appeal.

Affirmed in part, reversed in part.

GUILD, P. J., and HALLETT, J., concur.