DOROTHEA KOCOUREK, Plaintiff-Appellee, *v.* WILLIAM M. BOWLING *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-1794

Opinion filed May 18, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Richard J. Puchalski, Special Assistant Attorney General, of counsel), for appellants.

Legal Assistance Foundation of Chicago, of Chicago (John Bouman and Susan Connell, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Dorothea Kocourek (plaintiff) brought this action for administrative review of a decision of the Illinois Department of Labor and its officers (defendants) finding plaintiff ineligible for unemployment insurance benefits. Defendants moved to dismiss the complaint. After a hearing, the trial court denied defendants' motion. The trial court also found in favor of plaintiff and reversed the decision of defendants.

On appeal by defendants they raise two issues which will be dealt with separately.

## I

Defendants' first argument is that the instant action was not timely filed. Therefore, they contend the trial court erred in denying defendants' motion to dismiss the complaint. Ill. Rev. Stat. 1977, ch. 110, par. 48(1)(e).

In *Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 429-30, 384 N.E.2d 504, *appeal denied* (1979), 74 Ill. 2d 585, this court stated:

"Administrative [r]eview must be sought within 35 days of the date on which 'a copy of the decision sought to be reviewed was served upon the party affected * * *.' (Ill. Rev. Stat. 1977, ch. 110, par. 267.) As applicable here, there is the further provision in the same paragraph that 'a decision shall be deemed to have been served * * * when deposited in the United States mail, in a sealed envelope * * * with postage prepaid, addressed to the party * * *.'"

Defendants' Board of Review evidenced its decision in a letter dated March 29, 1979. Plaintiff did not file her complaint until May 4, 1979, 36 days after March 29, 1979.

The parties have agreed defendants, as the moving party, bear the burden of establishing March 29, 1979, as the mailing date of the decision. (See *Pel-Aire Builders, Inc. v. Jimenez* (1975), 30 Ill. App. 3d 270, 275, 332 N.E.2d 519.) The parties also agree on the level of proof necessary to establish such a mailing as set forth in the *Commonwealth Edison Co. v. Property Tax Appeal Board* decision (67 Ill. App. 3d 428, 430-31):

"[A] mailing may be proved by evidence of an office custom together with corroborating circumstances relevant to show the

custom has been followed in the particular instance. [Citation.] The [affidavits] supplementing the motion and in opposition to it must be examined to see whether under these requirements a mailing on [the relevant date] has been proven. If, considering the affidavits, there remains a material and genuinely disputed question of fact, evidentiary testimony must be taken."

See also Ill. Rev. Stat. 1977, ch. 110, par. 48(3).

Defendants' motion to dismiss was originally supported by an affidavit from Abraham Robinson, the secretary of defendants' Board of Review. Robinson stated only that the decision complained of was mailed to plaintiff "in due course of business" on March 29, 1979. This affidavit was withdrawn at the hearing on defendants' motion and replaced by three new affidavits. In his new affidavit, Robinson detailed the procedures in which dated decisions are prepared and distributed for mailing. He also detailed the safeguards taken to insure decisions are mailed on the day of their date. He stated the usual procedure was followed on March 29, 1979.

On cross-examination, Robinson stated he might see from one to 100 cases each day, but not all cases under review by the Board are seen by him personally. He could not recall the number of decisions he saw on March 29, 1979, and he could have seen from 25 to 100 or more. His conclusion that decisions dated March 29, 1979, were mailed on that day was based on office procedure and the fact that no safeguards were implemented on that day.

In his affidavit, George Knapik, a mail clerk, stated on March 29, 1979, he followed his general procedure of picking up outgoing mail and placing it in the out-mail unit. On cross-examination by plaintiff, Knapik testified he specifically recalled following this procedure on March 29, 1979, but could not remember any other details about that day such as the number of pieces of mail he picked up. On redirect examination, Knapik reiterated he follows the same procedure every day.

Helen Lawrence, defendants' mail room supervisor, in her affidavit detailed the general procedure by which outgoing mail is stamped, sealed and placed at the loading dock for pickup by the United States Postal Service. She concluded this procedure was followed on March 29, 1979. However, she conceded that this conclusion was based solely on general office procedure and not on her personal knowledge. She admitted she did not particularly recall March 29, 1979. On cross-examination, she testified the mail room may handle between zero and 40,000 pieces of mail on any given day.

Plaintiff submitted her own affidavit. She stated she received the notice of the decision on March 31, 1979. She discarded the envelope in which the decision was mailed and did not recall whether or on what date

it may have been post-marked. Defendants did not cross-examine plaintiff.

On the basis of this evidence, the trial judge held defendants had not met the requisite standard of proving both office custom plus some corroborating circumstances. Defendants urge this ruling was in error and against the manifest weight of the evidence. We cannot agree. While defendants' witnesses may have properly established the general procedures by which mail is processed, neither Robinson nor Lawrence claimed any personal recollection of this particular decision or of March 29, 1979. Knapik did claim specific recollection of March 29, but such recollection is neither credible nor dispositive in view of his limited responsibilities.

■■ Defendants, citing *Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 361 N.E.2d 379, urge that because plaintiff did not contradict defendants' affidavits, the facts alleged in them should be taken as true. Those affidavits, however, did not allege any corroborating facts in attempting to establish the March 29, 1979, mailing date. Only general office procedures were detailed with the conclusion that those procedures were followed on the date in question. Conclusory affidavits need not be accepted as true. (See *Suing v. Catton* (1970), 118 Ill. App. 2d 468, 470, 254 N.E.2d 806.) Furthermore, with her limited knowledge, plaintiff could not effectively challenge defendants' statements as to defendants' own procedures. Plaintiff's affidavit did, however, sufficiently challenge the conclusions of defendants' affidavits so as to create a question of fact as to the actual mailing date. See *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 347, 395 N.E.2d 1131.

The law applicable to this situation is clear. A date of mailing may not be established by evidence of an office custom standing alone without corroboration. We find this principle succinctly stated in *Commonwealth Edison Co. v. Property Tax Appeal Board* (1980), 86 Ill. App. 3d 414, 417, 407 N.E.2d 1088:

> "It is well established that a mailing may be proved by evidence of an office custom together with corroborating circumstances relevant to show that the custom has been followed in the particular instance."

■■ The following additional cases clearly indicate that defendants here have failed to prove the requisite corroborating circumstances. In *Commonwealth Edison Co.*, 86 Ill. App. 3d 414, 416, corroborating circumstances were established by an employee who specifically recalled preparation of the decision "because it was a 'large' decision * * *." The sender in *Owl Electric Co., Inc. v. United States Fidelity & Guaranty Co.* (1971), 131 Ill. App. 2d 333, 337, 268 N.E.2d 493, produced a dated certificate of mailing from the Post Office. In both *Buckingham Corp. v.*

*Ewing Liquors Co.* (1973), 15 Ill. App. 3d 839, 305 N.E.2d 278, and *Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 356 N.E.2d 1150, the issue was whether certain notices were mailed and not when. In *Buckingham*, a mailing was not proved where only custom was shown without some personal knowledge that the custom was in fact followed. (15 Ill. App. 3d 839, 844.) The *Tabor* court found various actions by both parties tended to corroborate the allegation of a mailing. (43 Ill. App. 3d 124, 130-31.) We concur with the able trial judge that the situation in *Buckingham* applies directly to the situation at bar and supports our ruling.

We, therefore, conclude the denial of defendants' motion to dismiss was not contrary to the manifest weight of the evidence and should be affirmed.

## II

Defendants also contend the trial court erred in reversing the decision of the Board of Review denying plaintiff unemployment insurance benefits. Defendants argue the Board of Review properly determined plaintiff was not available for work during the period for which benefits were claimed, and such decision was not against the manifest weight of the evidence.

Plaintiff voluntarily terminated her employment as a payroll clerk at the Revere Electric Supply Company (Revere), on September 19, 1977. On October 21, 1977, a claims adjudicator held plaintiff had good cause for leaving her work and thus was eligible for unemployment compensation benefits. (See Ill. Rev. Stat. 1977, ch. 48, pars. 420, 431.) Benefits were paid to plaintiff from September 19, 1977, through July 29, 1978. Plaintiff claimed no benefits during periods of vacation or temporary employment.

On August 10, 1978, Revere filed a notice of possible ineligibility with defendants. This notice again raised the issue of plaintiff having voluntarily left her job. It also stated Revere would rehire plaintiff if she desired full-time work. Plaintiff did not receive a copy of this notice.

Plaintiff received a letter from defendants requesting her presence at an interview concerning her eligibility. Plaintiff could not attend the interview as scheduled and was defaulted by the claims adjudicator. The claims adjudicator denied all benefits received by plaintiff because of her failure to appear at the interview to "rebut the presumption" she was ineligible for unemployment benefits. A recoupment decision for all benefits paid to plaintiff was also issued.

Plaintiff appealed. On September 28, 1978, a hearing was held before a referee. Present at this hearing were plaintiff and a representative of Revere. Plaintiff testified about her search for work during her unemployment and detailed a partial list of job contacts she made. Plaintiff had sought clerical, factory or cashier work, but was deficient in mathematics

and typing. She was willing to accept other jobs at wages as low as $3 per hour. She was willing to work 40 hours per week and travel up to an hour on public transportation to go to work. Plaintiff also noted she had taken temporary jobs in the hope of being hired full time. She was registered at employment agencies. At the close of her testimony, the representative from Revere stated his company would like to have plaintiff return to her old job. When asked if she would consider returning to Revere, plaintiff replied the transportation was bad and she disliked filing.

On October 30, 1978, the referee affirmed the decision plaintiff was ineligible for benefits. The referee found plaintiff had unduly restricted her employment opportunities by refusing to accept work which involved filing.

Plaintiff appealed to the Board of Review. Plaintiff submitted additional records of her job search during the period in question, totalling 101 job contacts. Plaintiff also submitted a statement explaining that her reluctance about accepting filing positions was due to a foot problem which prevented continuous standing. She also noted her return to full-time employment on November 8, 1978.

The Board of Review affirmed the referee by a letter dated March 29, 1979. The Board held plaintiff had placed undue restrictions on her employability and had obstinately refused to meet realistic labor conditions. The Board also chose not to believe plaintiff actually made the work search described in her list due to unspecified "discrepancies in her assertions."

Illinois law provides in relevant part (Ill. Rev. Stat. 1977, ch. 48, par. 420(C)):

> "Eligibility for benefits. An unemployed individual shall be eligible to receive benefits with respect to any week only if the Director finds that:
>
> * * *
>
> C. He is able to work, and is available for work; provided that during the period in question he was actively seeking work."

■■ It is undisputed the burden of proving such eligibility rests on the claimant. (*Brown v. Board of Review* (1972), 8 Ill. App. 3d 19, 23, 289 N.E.2d 40, *appeal denied* (1973), 53 Ill. 2d 603.) The standard of review of this court, as set forth in *Flores v. Board of Review* (1979), 74 Ill. App. 3d 667, 671, 393 N.E.2d 638, is also not in dispute:

> "Our function upon review of the Board's determination is limited to ascertaining whether the Board's findings are supported by the manifest weight of the evidence. [Citation.] We may neither substitute our own judgment nor overturn the Board's findings unless they are without substantial support in the record. [Citation.] If the Board's determination is contrary to the evidence, it is

our duty, however, to affirm the action of the trial court in setting it aside."

In deciding eligibility of a wage earner and availability for work, the court must determine the factual issues on a case-by-case basis. (*Mohler v. Department of Labor* (1951), 409 Ill. 79, 83, 97 N.E.2d 762.) Also, the liberal approach to construction of the pertinent statute "for the benefit of the unemployed worker has been approved repeatedly by the Illinois Supreme Court." *John S. Barnes Corp. v. Board of Review* (1965), 55 Ill. App. 2d 102, 110, 204 N.E.2d 20.

■■ A review of the evidence impels us to affirm the ruling of the trial court that the decision of the Board of Review was against the manifest weight of the evidence. First, we find no evidence to support the Board's conclusion that plaintiff placed an undue restriction on her employability by refusing to perform her previous work. Plaintiff had been formerly employed as a clerical worker, and there is every indication in both her work search and her testimony that she actively sought such employment during the period in question. Similarly, we find no evidence plaintiff ever stipulated conditions of employment rendering her unavailable for employment. Rather, plaintiff testified she was willing to accept work at low wages and travel up to an hour to get to such work. We note plaintiff accepted temporary employment and was registered at employment agencies. In view of this, we find no "discrepancies" leading us to doubt that plaintiff made the extensive work search detailed in her lists. The trial judge noted this list to be "one of the most complete lists * * * that this court has observed * * *." We find no reason to dispute this finding.

Defendants assert their decision is supported by plaintiff's refusal of Revere's offer of re-employment at her former job before the referee and plaintiff's expressed dislike for filing. First, we note that this action concerns plaintiff's availability for work from September 19, 1977, through July 29, 1978. This alleged offer of re-employment occurred on September 28, 1978, and therefore has no actual bearing on plaintiff's availability during the critical period in question. Second, there is no evidence that plaintiff ever declined a job offer during the period in question because it involved filing. Finally, plaintiff's reluctance to accept a job which involved filing was not unreasonable in light of a medical condition which prevented her from standing constantly.

We accordingly affirm the finding of the trial court that the decision finding plaintiff ineligible for unemployment compensation was against the manifest weight of the evidence.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.