FIRST NATIONAL BANK OF ANTIOCH, Plaintiff-Appellee, v. GUERRA CONSTRUCTION COMPANY, INCORPORATED, *et al.*, Defendants (Hill-Behan Lumber Company, Defendant-Appellant).

Second District   No. 2—86—0597

Opinion filed March 24, 1987.

Michael W. Rathsack, of Chicago, and Benjamin Daidone, of Daidone & Daidone, of Niles, for appellant.

Howard R. Teegen, of Soffietti, Johnson, Teegen & Phillips, of Fox Lake, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, the First National Bank of Antioch, sued three defendants, Guerra Construction Company, Inc.; JVN, Inc.; and Hill-Behan Lumber Company, for payments allegedly due plaintiff under an assignment of accounts receivable which the bank obtained from Midwest Underground-Pierce & Sons, Inc. Of the three defendants, only Hill-Behan Lumber Company (hereafter referred to as defendant) is a party to this appeal. Defendant moved for a directed verdict at the close of plaintiff's evidence, which motion was denied by the trial court. Defendant elected to stand on its motion and presented no evidence at trial. At the close of all the evidence, the court entered judgment for plaintiff, and defendant appeals, contending that the trial

court erred in denying its motion for directed verdict because plaintiff failed to introduce sufficient evidence that it mailed the required notice of assignment to defendant.

In 1983, Midwest Underground-Pierce & Sons, Inc. (Midwest) performed excavating and landscaping work for defendant at its Villa Park lumberyard pursuant to a written contract. Defendant made a number of payments under this contract, the last occurring on March 26, 1984. Midwest in turn was indebted to plaintiff for numerous loans made by plaintiff to Midwest. As collateral for these loans, Midwest assigned its accounts receivable, including defendant's, to plaintiff. On November 30, 1983, Midwest defaulted on its obligations to plaintiff. Midwest eventually filed bankruptcy. On November 30, 1983, Louis Korom, a vice-president of plaintiff, compiled a list of corporations he thought might be account debtors of Midwest, seeking to notify them of the assignment and request them to make future payments directly to the bank.

When the bank did not receive the final payment on the Midwest contract from defendant, it filed suit in the circuit court of Lake County on February 6, 1985. At trial, the key issue was whether the bank had properly notified defendant of the assignment from Midwest. After plaintiff's initial presentation of evidence, the court granted defendant's motion for a directed verdict. It then allowed plaintiff to reopen its case and, following additional evidence, denied defendant's renewed directed verdict motion. As previously noted, defendant elected to stand on this motion and presented no evidence. The court eventually found for plaintiff in the amount of $16,759. Defendant appeals, renewing its contention that the evidence was insufficient to prove that the bank sent defendant notice of the assignment as required by law.

Defendant argues that its operations manager, George Schiller, who handled all payments and correspondence under the Midwest contract, never received notice of the assignment from Midwest to the bank. Defendant claims that plaintiff's evidence is insufficient because it demonstrates only plaintiff's customary practice as to mailing and does not show that the practice was followed on this particular occasion. Defendant also contends that plaintiff's exhibit No. 14, tending to corroborate defendant's receipt of the notice, was improperly admitted into evidence and that, if the notice was mailed, mailing was insufficient as a matter of law because it was addressed to Hill-Behan Lumber Company generally and not to George Schiller, who was responsible for the transactions in question. Since defendant questions the sufficiency of the evidence, it is necessary to examine the evi-

dence presented by plaintiff related to mailing of the notice.

Mary Owens testified that she was the supervisor of plaintiff's data processing department. She described the bank's mailing procedures at the relevant time. Mail was taken to the mail operations department by clerks and secretaries, who placed it in one of two bins, one for Antioch mail and one for out-of-town mail. A postal clerk then collected the mail, weighed it, affixed postage with a meter, placed it in postal trays, and took it to the post office. Any mail returned by the post office would be routed to the audit department and would eventually be returned to the person who originated it.

Korom testified that after Midwest defaulted on its obligations to plaintiff, he compiled a list of names of accounts receivable of Midwest for use in mailing notices of assignment. Korom identified the list of 13 such names at trial. He testified that he gave the list to a secretary, who prepared 13 original notices of assignment in duplicate. She then gave them back to Korom, who signed them and returned them to the secretary for mailing. Hill-Behan Lumber Company's correct address appeared on this list, which was admitted into evidence.

The witness corroborated Owens' testimony as to plaintiff's usual mailing procedure. He also stated that the notices were to be sent by regular mail. Korom received a written acknowledgement of the assignment from only one of the 13 names, so he called the others on the list, including defendant. He testified that he spoke with someone at Hill-Behan named Sue, who said the notice had been received.

Korom did not know when or how the notice was received by defendant. He did not mail the assignment himself and did not know who did. He did not know if the correct amount of postage was placed on it or if it was placed in a mailbox.

Korom also identified and testified regarding plaintiff's exhibit No. 14. Plaintiff's exhibit No. 14 consisted of two pages stapled together. The first page appeared to be typed on Hill-Behan stationery, was addressed to "Midwest Underground Pierce & Sons," and read as follows:

"Dear Jim,
Enclosed is the letter we received from the First National Bank of Antioch.

Hill-Behan Lumber Co."

The letter was dated December 7, 1983. Except for the typewritten notation "Hill-Behan Lumber Co.," it was not signed.

The second page of plaintiff's exhibit No. 14 was identified by Korom as the original of the notice of assignment which was prepared by defendant. Korom testified that he came into possession of plain-

tiff's exhibit No. 14 when the books and records of Midwest were turned over to plaintiff by the receiver in bankruptcy. On cross-examination, Korom did not know who wrote the letter or when it was received by Midwest. He could not definitely recall whether he first saw these documents at Midwest's office or at the bank. He testified that the pages were stapled together when he first saw them, but he could not say whether they were stapled together when they were received by Midwest or, if not, when they were stapled together.

George Schiller testified that he was the vice-president and general manager of defendant. He never received notice of assignment from plaintiff. He did not write or cause to be sent the first page of plaintiff's exhibit No. 14 and did not have any conversations with Jim Pierce, the owner of Midwest, about a notice from the bank. Schiller testified that he always signed his letters and in 30 years with defendant had never seen a letter go out unsigned. Further, he stated that at the relevant time, defendant did not have an employee named Sue. However, on cross-examination, he testified that he did not see all correspondence which was sent out from his office. He also admitted that he did not know the names of all Hill-Behan's employees and could not even remember the name of the company's switchboard operator.

Jim Pierce, the former owner of Midwest, testified that he had not seen the two pages comprising plaintiff's exhibit No. 14 until shortly before trial. He read most, but not all, of the correspondence to Midwest. He had not had any conversations with Schiller about the two pages of the exhibit.

Based on this evidence, the court initially admitted plaintiff's exhibit No. 14 into evidence. After hearing arguments at the close of plaintiff's case, the court reversed itself and held plaintiff's exhibit No. 14 inadmissible. Because the court felt plaintiff had been prejudiced by the court's reversing itself, it allowed plaintiff to reopen its case. Plaintiff subsequently called Nancy Goetz. She testified that she had been the commercial loan clerk at the bank in November 1983. She identified the second page of plaintiff's exhibit No. 14 as a notice of assignment which she had prepared. She typed an original notice of assignment to each of the 13 companies on the list, made 13 copies, and gave all 26 to Korom to sign. He returned them to her, and she stuffed them in envelopes and took them downstairs to be mailed, placing them in the out-of-town bin. Following Goetz's testimony, the court again admitted plaintiff's exhibit No. 14 and denied defendant's renewed motion for a directed verdict. In this court, defendant renews its argument that this evidence was insufficient for the court to

find that defendant received notice of the assignment from Midwest to the bank.

■■■ The Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*) requires an assignee who desires to receive payments directly from an account debtor of the assignor to give the account debtor a notice of assignment and demand for payment. When the account debtor receives the notice, the debtor is then obligated to make payment directly to the assignee. (Ill. Rev. Stat. 1985, ch. 26, par. 9—318(3).) Because it is difficult for a sender to prove that an item was received by the addressee, the general rule is that correspondence is presumed to have been received when the correspondence has been placed in a properly addressed envelope with adequate postage affixed and deposited in the mail. (*Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 129, 356 N.E.2d 1150.) The presumption is not conclusive and may be rebutted by evidence that the correspondence was not received by the addressee. (43 Ill. App. 3d 124, 129, 356 N.E.2d 1150.) Evidence of general office practice regarding mailing is insufficient unless accompanied by evidence that the practice was followed in the particular instance in question (*Donnelly v. Washington National Insurance Co.* (1985), 136 Ill. App. 3d 78, 86, 482 N.E.2d 424) or by corroborating evidence that it was received (*Kocourek v. Bowling* (1981), 96 Ill. App. 3d 310, 313, 421 N.E.2d 397).

Defendant cites three cases, *Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 345 N.E.2d 172, *Goetz v. Country Mutual Insurance Co.* (1975), 28 Ill. App. 3d 154, 328 N.E.2d 109, and *Buckingham Corp. v. Ewing Liquors Co.* (1973), 15 Ill. App. 3d 839, 305 N.E.2d 278, to support its argument that mailing was not proved. Plaintiff contends that those cases are inapposite to the present situation and that *Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 356 N.E.2d 1150, is more closely analogous. The court for its part relied heavily on *Commonwealth Edison Co. v. Property Tax Appeal Board* (1978), 67 Ill. App. 3d 428, 384 N.E.2d 504, *appeal following remand* (1980), 86 Ill. App. 3d 414, 407 N.E.2d 1088, in reaching its decision. After examining these cases, we agree with plaintiff and the trial court.

In *Lynn*, an insurance agent testified as to his usual practice in making a notice of claim to the insurance company, but could not testify as to the particular transactions because he did not personally mail it and he did not even have a copy of the correspondence. (*Lynn v. Village of West City* (1976), 36 Ill. App. 3d 561, 563, 345 N.E.2d 172.) In *Goetz*, the insurer's proof consisted solely of demonstrating its usual office practice. (*Goetz v. Country Mutual Insurance Co.* (1975), 28 Ill. App. 3d 154, 162, 328 N.E.2d 109.) In *Buckingham*, the

witness stated that his employer used a mailing service for mass mailings and he had no personal knowledge of the practices of the service. (*Buckingham Corp. v. Ewing Liquors Co.* (1973), 15 Ill. App. 3d 839, 842, 305 N.E.2d 278.) Conversely, in *Tabor*, the plaintiff's proof showed not only the office custom, but that correctly addressed confirmation forms had been prepared in accordance with that custom. In addition, other corroborating circumstances existed: defendant admitted receiving other mailings pursuant to the same business practice, a copy of the confirmation in question had been received by plaintiff's branch office, and none of the confirmations sent out in the same mailing were returned by the post office. (*Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 130, 356 N.E.2d 1150.) Similarly, in *Commonwealth Edison*, the secretary who prepared the mailing not only testified as to general office practice, but also stated that she remembered the specific notice in question being picked up by the mail clerk, who also testified. *Commonwealth Edison Co. v. Property Tax Appeal Board* (1980), 86 Ill. App. 3d 414, 415-16, 407 N.E.2d 1088.

In the present case, plaintiff initially established its usual office practice. In addition, Goetz specifically recalled preparing the notices of assignment in question because they were the only ones she had ever done. She testified as to typing them, having them signed, stuffing them in envelopes, and taking them to the mailroom. Although the mail clerk did not testify that the notices were actually deposited in a mailbox, direct testimony from the person who actually performed the mailing is not necessary if corroborating circumstances are otherwise sufficient. (*Tabor & Co. v. Gorenz* (1976), 43 Ill. App. 3d 124, 131, 356 N.E.2d 1150.) In addition, Korom testified that he dialed the number he obtained from information for Hill-Behan Lumber Company and spoke to someone named Sue, who told him the notice had been received. Although Schiller testified that no one by that name worked for Hill-Behan, he also testified that he could not remember the name of every Hill-Behan employee. The conflict in the evidence was for the trial court, sitting as the trier of fact, to resolve. *Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 142, 456 N.E.2d 224.

Finally, defendant's receipt of the notice is corroborated by plaintiff's exhibit No. 14, a letter on Hill-Behan stationery acknowledging receipt of the notice and stapled to the original copy of the notice. Although defendant in its brief argues that plaintiff's exhibit No. 14 was erroneously admitted, defendant cites no authority for this contention, and therefore it may be deemed waived. (103 Ill. 2d R. 341(e)(7).) We need not pass on the exhibit's admissibility for another

reason. The evidence of plaintiff's usual mailing procedure was corroborated by evidence that that procedure was followed on November 30, 1983, and by the phone conversation between Lou Korom and someone purporting to be an employee of defendant who stated that the notice had been received. These two circumstances were sufficient to raise the presumption of mailing, which defendant chose not to rebut. Therefore, any error in the introduction of plaintiff's exhibit No. 14 was harmless error.

■ Finally, defendant argues that the notice was not properly sent because it was addressed to Hill-Behan Lumber Company rather than George Schiller. Schiller, defendant maintains, was responsible for all transactions regarding the Midwest account, and thus the notice should have been sent to him. This argument is patently without merit. In *First National Bank v. Board of Education* (1979), 68 Ill. App. 3d 21, 385 N.E.2d 811, cited by defendant, the court found that a notice sent to the president of the board did not constitute notice to the board. The court found that, on the "peculiar facts" of that case, where the president of the board acted *ultra vires* in arranging the contract, the notice was apparently mailed to the president at his home address, and the board had no actual notice, the notice was deemed insufficient. (68 Ill. App. 3d 21, 26, 385 N.E.2d 811.) No such peculiar circumstances exist in the present case. Section 9—318 of the Uniform Commercial Code clearly states that the "account debtor" is the entity entitled to notice. (Ill. Rev. Stat. 1985, ch. 26, par. 9—318(3).) Clearly, Hill-Behan Lumber Company was the account debtor. Evidence showed that the contract with Midwest was signed by Schiller as agent for Hill-Behan and that payments thereunder were made by Hill-Behan, not Schiller personally. If defendant's employees could not route the correspondence to the person responsible for handling it, defendant, not the bank, should bear the consequences. See *Ertel v. Radio Corp. of America* (1974), 261 Ind. 573, 576-77, 307 N.E.2d 471, 474.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DUNN and UNVERZAGT, JJ., concur.