No.  2--00--1467

     

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

ALAN BYINGTON and GENE BYINGTON, 
 ) Appeal from the Circuit Court

d/b/a Byington Brothers, ) of Carroll County.

  ) 

Plaintiffs-Appellees,  ) 

) Nos. 97--MR--9

v. ) 00--MR--1(Cons.)

)
     

THE DEPARTMENT OF AGRICULTURE  ) 

and CONLEY GRAIN COMPANY,  ) Honorable

    ) Michael T. Mallon,

Defendants-Appellants.  ) Judge, Presiding.  

JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs, Alan and Gene Byington, d/b/a Byington Brothers, filed a complaint for administrative review in the circuit court of Carroll County after defendant Illinois Department of Agriculture (the Department) found that they were not entitled to recovery under the Grain Code (240 ILCS 40/1--1 
et seq.
 (West 1998)).  The trial court reversed the decision of the Department and entered a judgment in favor of the plaintiffs in the amount of $85,642.91.  The Department and defendant Conley Grain Company now appeal from the decision of the trial court, arguing that the plaintiffs' claim does not fall within the scope of the Grain Code.  We affirm.

The instant controversy arose from the economic failure of Hahnaman-Albrecht, a licensed grain dealer and Class I grain warehouseman.  See 240 ILCS 40/1--10(b) (West 1998).  On February 13, 1997, the Department conducted a routine examination of Hahnaman-Albrecht's records and found a working capital deficiency of nearly $5 million.  Consequently, on February 27, 1997, the Department suspended Hahnaman-Albrecht's grain dealer and warehouseman licenses.  The Department then sent Hahnaman-Albrecht notice of a revocation hearing.  On March 6, 1997, prior to the revocation hearing, Hahnaman-Albrecht voluntarily surrendered its grain licenses.  

On March 7, 1997, Conley Grain was licensed by the Department as a grain dealer and Class I grain warehouseman.  On that same day, Conley Grain entered into a successor agreement, acquiring all of Hahnaman-Albrecht's grain assets and obligations.  See 240 ILCS 40/1--10(b) (West 1998).  However, on March 13, 1997, Conley Grain surrendered its grain dealer and warehouse licenses. 

Sometime after March 13, 1997, the plaintiffs filed a claim with the Department, seeking compensation pursuant to section 25--10 of the Grain Code (240 ILCS 40/25--10 (West 1998)).  The plaintiffs contended that Conley Grain owed them for grain delivered to Hahnaman-Albrecht.  

On July 21, 1998, the Department held an administrative hearing.  The following evidence was introduced at the hearing.  Alan Byington testified that in 1996 and 1997 the plaintiffs had sold 110,279 bushels of corn to Hahnaman-Albrecht and that they should have been paid $196,538.28 for the corn.  Byington testified that they were paid only $95,771.92, leaving a balance of $100,756.36 still due.  Alan Byington identified weight tickets documenting the delivery of 110,279 bushels of corn to Hahnaman-Albrecht.  Alan Byington testified that when Hahnaman-Albrecht surrendered its licenses and was succeeded by Conley Grain,  Hahnaman-Albrecht still owed the plaintiffs $100,756.36.  Alan Byington maintained that Conley Grain did not pay this amount before surrendering its licenses. 

Gerald Franks testified that he was a warehouse examiner for the Department.  After Hahnaman-Albrecht surrendered its licenses, Franks examined Hahnaman-Albrecht's books to determine if any outstanding grain claims existed.  Franks testified that, according to Hahnaman-Albrecht's records, the plaintiffs had been paid in full.

David Von Holten testified that he was an operations manager for Hahnaman-Albrecht.  Von Holten testified that the discrepancy in Hahnaman-Albrecht's records and the plaintiffs' records stemmed from a contract dispute that arose between the parties in September 1995.  Von Holten identified two unsigned contracts.  According to these contracts, the plaintiffs had agreed to sell Hahnaman-Albrecht 50,000 bushels of corn at a future date.  Subsequently, the price of corn rose and the plaintiffs denied entering into the contracts.  When the plaintiffs refused to honor the contracts, Hahnaman-Albrecht purchased 50,000 bushels of corn on the Board of Trade at a higher price.  Hahnaman-Albrecht charged the price difference of $72,725 against the plaintiffs' account.  In 1996 and 1997, the plaintiffs continued to sell corn to Hahnaman-Albrecht.  Before paying the plaintiffs for these sales however, Hahnaman-Albrecht deducted the disputed amount.   

Von Holten also testified that it was customary for Hahnaman-Albrecht to take oral orders from sellers.  Von Holten testified that it was Hahnaman-Albrecht's procedure to mail a copy of the contract to the seller the day after receiving an oral order, as a written confirmation of the order.  Von Holten testified that, if the contracts were not returned signed after four weeks, a Hahnaman-Albrecht manager would hand deliver the contracts.      

Gerald Lessman testified that he was a manger for Hahnaman-Albrecht.  In April or May 1996, Lessman hand delivered the two September 1995 contracts to the plaintiffs, along with five other contracts.  Lessman testified that Alan Byington denied placing the September 1995 orders and refused to sign those two contracts.    

On December 19, 1998, the Department's hearing officer denied the plaintiffs' claim for compensation under the Grain Code.   In denying the plaintiffs' claim, the hearing officer found that the Department did not have jurisdiction because the claim involved a contract dispute.  Additionally, the hearing officer found that, notwithstanding the jurisdictional issue, the plaintiffs had entered into the disputed contracts and were responsible for Hahnaman-Albrecht's cost in acquiring the 50,000 bushels of corn elsewhere. 

On January 25, 1999, the plaintiffs filed a motion to reconsider with the director of the Department.  On December 1999, the director affirmed the order of the hearing officer.  The director found that the plaintiffs had received written confirmation of their oral order within a reasonable time and, therefore, the disputed contracts were enforceable pursuant to section 2--201 of the Uniform Commercial Code (Commercial Code) (810 ILCS 5/2--201 (West 1998)).

On January 7, 2000, the plaintiffs filed an action for administrative review in the circuit court of Carroll County, naming both the Department and Conley Grain as defendants.  On November 20, 1999, the trial court reversed the decision of the Department, finding that the disputed contracts violated the statute of frauds and that both Hahnaman-Albrecht and Conley Grain had left indebtedness to the plaintiffs upon their failure.  Pursuant to the Grain Code, the trial court awarded the plaintiffs 85% of the unpaid amount due them, which equaled $85,642.91.  See 240 ILCS 40/25--10(e) (West 1998).  Conley Grain filed a timely notice of appeal.  The Department subsequently joined in the appeal.

The defendants' first argument is that the Department lacked jurisdiction over the plaintiffs' claim.  The defendants argue that the plaintiffs' claim did not fall within the provisions of the Grain Code, as it involved a contract dispute rather than a claim against a failed grain licensee.

The term "jurisdiction," although not strictly applicable to an administrative body, may be used to designate the authority of the administrative body to act.  
Armstead v. Sheahan
, 298 Ill. App. 3d 892, 894-95 (1998).  The issue of an administrative agency's jurisdiction is a question of law (
County of Knox ex rel. Masterson
 
v. The Highlands, L.L.C.
, 188 Ill. 2d 546, 554 (1999)), and, thus, the standard of review is 
de
 
novo
 (
Branson v. Department of Revenue
, 168 Ill. 2d 247, 264-65 (1995)).  Since an administrative agency, such as the Department, is a creature of statute, its jurisdiction or authority must be found within the provisions of the statute by which it acts.  
Schalz v. McHenry County Sheriff's Department Merit Comm'n
, 113 Ill. 2d 198, 202-03 (1986).  Accordingly, we will turn to an analysis of the  Grain Code.  

The Grain Code was enacted and the Grain Insurance Fund was established to "protect producers in the event of the failure of a licensed grain dealer or licensed warehouseman and to ensure the existence of an adequate resource so that persons holding valid claims may be compensated for losses."  240 ILCS 40/1--5 (West 1998).  Section 25--10(e) of the Grain Code provides that the Department will compensate claimants who have incurred financial losses due to the failure of a licensed grain dealer, for 85% of a valid claim, up to $100,000.  240 ILCS 40/25--10(e) (West 1998). 

The Grain Code defines a claimant to include "a producer *** who possesses evidence of the sale at an Illinois location of grain delivered to a failed grain dealer and who was not paid in full."  240 ILCS 40/1--10(b) (West 1998).  The Grain Code defines a failure as: 

"(a) a formal declaration of insolvency; 

(b) a revocation of a license; 

(c) a failure to apply for license renewal, leaving indebtedness to claimants;

(d) a denial of license renewal, leaving indebtedness to claimants; or

(e) a voluntary surrender of license, leaving indebtedness to claimants."  240 ILCS 40/1--10(b) (1998).

The Grain Code expressly authorizes the Department to adjudicate claims made against a failed grain licensee.  240 ILCS 40/25--5 (West 1998).  Section 25--5(f) of the Grain Code provides that "[t]he Department shall determine the validity, category, and amount of each claim within 120 days after the date of failure of the licensee."  240 ILCS 40/25--5(f) (West 1998).  Section 25--5(h) further provides that "[a] claimant *** may request a hearing on the Department's determination."  240 ILCS 40/25--5(h) (1998).    

    In the instant case, we hold that the Department had jurisdiction over the plaintiffs' claim.  In their claim, the plaintiffs alleged that they had sold and delivered grain to Hahnaman-Albrecht and had documentation of their sales.  The plaintiffs further alleged that neither Hahnaman-Albrecht nor its  successor, Conley Grain, had paid them in full before they voluntarily surrendered their licenses.  Although the Department had to determine whether the parties had entered into the disputed contracts in order to determine whether Hahnaman-Albrecht and Conley Grain had left indebtedness to the plaintiffs, the Grain Code gives the Department the authority to determine "the validity" of such grain claims (240 ILCS 40/25--5(f) (West 1998)).  Therefore, the Department was not without authority to resolve the instant dispute, and the trial court did not err in reversing the Department's finding. 

In so holding, we note that 
Kaufman  Grain Co., Inc. v. Director of the Department of Agriculture
, 179 Ill. App. 3d 1040 (1988), relied upon by the defendants, is distinguishable from the case at bar.  In 
Kaufman
, a
 grain producer filed a claim with the Department because he disputed the damage discount that a grain warehouse had charged him.  
Kaufman  Grain Co.
, 179 Ill. App. 3d at 1040, 1041-42.  The 
Kaufman
 court held that the Department was without statutory authority to dispute claims between grain producers and grain dealers and warehouses concerning the quality of grain.  
Kaufman  Grain Co.
, 179 Ill. App. 3d at 1047.  As the 
Kaufman
 case did not involve a failed grain licensee however, we fail to see how it is analogous to the instant case.

The defendants' next argument on appeal is that trial court erred in reversing the Department's finding that the disputed contracts were enforceable because the plaintiffs had received a written confirmation of their oral order within a reasonable time.  See 810 ILCS 5/2--201(2) (West 1998).  The defendants conclude that the disputed contracts were not prohibited by the statute of frauds and that, therefore, the plaintiffs were properly charged for their failure to provide the 50,000 bushels of corn. 

We must first determine the applicable standard of review.  Under the Administrative Review Law (735 ILCS 5/3--101 
et seq.
 (West 1998)), an agency's finding of fact 
will be reversed only if it against the manifest weight of the evidence; however an agency's determination on an issue of law is reviewed 
de
 
novo
.  
Branson
, 168 Ill. 2d at 264.  In the case before us, the Department found that the disputed oral contracts were enforceable because the plaintiffs had received a written confirmatory memorandum within a reasonable time as required by section 2--201(2) of the Commercial Code (810 ILCS 5/2--201(2) (West 1998)).  The question of whether a written confirmation of an oral contract was received is a question of fact.  See 
Tabor & Co. v. Gorenz
, 43 Ill. App.  3d 124, 129 (1976); 
Pillsbury Co. v. Buchanan
, 37 Ill. App. 3d 876, 878 (1976).  Accordingly, we will  review the Department's factual finding to determine if it was against the manifest weight of the evidence.  

 The parties agree that the provisions of the Commercial Code  govern this transaction.  Section 2--201(1) of the Commercial  Code provides: 

"A contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." 810 ILCS 5/2--201(1) (West 1998). 

However, for purposes of the Commercial Code, both grain producers and the grain licensees are considered merchants.  
Sierens v. Clausen
, 60 Ill. 2d 585, 588-89 (1975).  Section 2--201(2) of the Commercial Code provides: 

"Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to note its content, it satisfies the requirement of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received." 810 ILCS 5/2--201(2) (West 1998).

In this case, we hold that the Department's finding that the plaintiffs received a confirmatory memorandum from Hahnaman-Albrecht was against the manifest weight of the evidence.  Although Von Holten testified that it was Hahnaman-Albrecht's policy to mail out a confirmatory memorandum the day after receiving an oral order, there is no corroborating evidence that a confirmatory memorandum was in fact mailed.  See 
First National Bank of Antioch v. Guerra Construction Co., Inc.
 153 Ill. App. 3d 662, 668 (1987).  In 
Guerra
 
Construction
, this court held that, without other corroborative evidence, testimony of general office practice regarding the mailing of a confirmatory memorandum is insufficient to prove that the confirmatory memorandum was received.  
Guerra Construction Co.
, 153 Ill. App. 3d at 667.  In that case, we
 found corroborating evidence, based on a bank employee's testimony that she typed, sealed, and addressed the confirmation.  
Guerra Construction Co.
, 153 Ill. App. 3d at 668.  Additionally, another bank employee testified that he had spoken to a person from the construction company who told him that the confirmatory memorandum had been received.  
Guerra Construction Co.
, 153 Ill. App. 3d at 668.  

Here, unlike 
First National Bank of Antioch
, the record does not corroborate that Hahnaman-Albrecht's general office practices were followed.  Rather, the record suggests that Hahnaman-Albrecht did not follow its usual policies in this case.  Von Holten testified that it was also Hahnaman-Albrecht's policy to hand deliver contracts after four weeks if they had not been returned signed.  However, Lessman testified that he had not hand delivered the September 1995 contracts until April or May 1996, approximately seven months after the plaintiffs allegedly placed the oral order.  Accordingly, the plaintiffs did not receive a written confirmation of their oral order prior to April or May 1996.  Due to the volatility of the grain market, a seven-month delay in sending a confirmatory memorandum is unreasonable.  See 
Bureau Service Co. v. King
, 308 Ill. App. 3d 835, 839 (1999) (an  eight-month delay in sending a written confirmation was unreasonable as a matter of law).  

As the disputed contracts were not signed, nor was a confirmatory memorandum received within a reasonable time, they were unenforceable.  Since the contracts were not enforceable, it was improper for them to be charged against the plaintiffs' account.  Therefore, the plaintiffs were still owed money for grain that they delivered to Hahnaman-Albrecht when Conley Grain surrendered its license,  and they should have been compensated under section 25--10 of the Grain Code. (240 ILCS 40/25--10 (West 1998)).

For the foregoing reasons, the judgment of the circuit court of Carroll County is affirmed.

Affirmed.

HUTCHINSON, P.J., and CALLUM, J., concur.