# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Irvington Elevator Co. v. Heser*, 2012 IL App (5th) 110184

---

| | |
|---|---|
| Appellate Court Caption | IRVINGTON ELEVATOR COMPANY, INC., Plaintiff-Appellant, v. ROBERT JEFFREY HESER, ROBERT JULES HESER, and ANDREW JASON HESER, Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-11-0184 |
| Filed<br>Rehearing denied | October 24, 2012<br>February 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was improperly entered for defendants in an action alleging a breach of the oral hedge-to-arrive grain contracts defendants entered into with plaintiff grain elevator, since a genuine issue of material fact existed as to whether defendants assented to plaintiff's delivery of confirmation statements. |
| Decision Under Review | Appeal from the Circuit Court of Marion County, No. 08-L-44; the Hon. Michael D. McHaney, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal   Robert J. Selsor, Mark B. Weinheimer, and Richard A. Voytas, Jr., all of Polsinelli Shughart PC, of St. Louis Missouri, for appellant.

Christopher W. Byron, Christopher J. Petri, and Brian R. Kalb, all of Byron Carlson Petri & Kalb, LLC, of Edwardsville, for appellees.

Panel   JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Chapman concurred in the judgment and opinion.


**OPINION**

¶ 1    Plaintiff, Irvington Elevator Company, Inc., filed a breach of contract claim regarding grain contracts allegedly entered into with defendants, Robert Jeffrey Heser (Bobby), Robert Jules Heser (Bob), and Andrew Jason Heser (Andy). Defendants raised a statute of frauds affirmative defense. The circuit court of Marion County granted summary judgment in favor of defendants on their statute of frauds affirmative defense. The issue on appeal is whether the trial court erred in granting summary judgment in favor of defendants and against plaintiff. We reverse and remand.


¶ 2                              BACKGROUND

¶ 3    Plaintiff is a Delaware corporation that operates a grain elevator in Irvington, Illinois. Defendants are a father (Bob) and two sons (Bobby and Andy) who are grain farmers. Plaintiff maintains that the parties entered into certain oral contracts concerning the sale of grain. Plaintiff alleged that it has a 25-year history of contracting with defendants for the sale of their grain. Plaintiff's grain marketer is Clark Schnitker, who is defendants' cousin. He has been employed by plaintiff for more than 25 years, and during that time he has negotiated hundreds of grain contracts with many farmers doing business in Marion County.

¶ 4    Beginning in May 2006, the parties began transacting business on the basis of verbal "hedge-to-arrive" contracts with respect to the sale of grain. A hedge-to-arrive contract is an agreement for the sale of a certain amount and type of grain from the farmer to the grain elevator at some time in the future. On the day the contract is made, the elevator hedges against the risk of falling grain prices by selling futures contracts on the Chicago Board of Trade in the contract quantity and at the initial contract price. The futures contracts expire in the month of delivery of the grain. After the contract is made, the farmer is responsible for determining the final contract price by contacting the grain elevator to select a "basis" that will be either added or subtracted from the initial contract basis. The basis is the difference,

on any given day, between the futures price for the grain on the Chicago Board of Trade and the cash price offered by the elevator; thus, it can be either a positive or a negative number. Once the farmer sets the basis, the hedge-to-arrive contract becomes a cash contract, and the farmer delivers the grain and receives the final contract price.

¶ 5        According to Clark Schnitker, since 2006 Bobby has been the only person responsible for selling defendants' grain to plaintiff and has done so only via hedge-to-arrive contracts. Defendants dispute that they entered into any oral hedge-to-arrive contracts, but for purposes of this appeal, defendants agree that we are to assume that they orally entered into the hedge-to-arrive contracts, specifically contracts numbered 2699, 2703, 2704, 2709, 2717, 2718, 2728, 2746, 2747, 2753, 2765, and 2766. Plaintiff filed suit on all these contracts, but the motion for summary judgment that is the subject of this appeal pertained only to nine contracts, 2699, 2703, 2704, 2709, 2717, 2718, 2728, 2765, and 2766. Defendants did not move for summary judgment on the other three contracts, 2746, 2747, and 2753, because these contracts were followed up with written confirmations within one or two days of the contract date. All of the remaining alleged contracts that are the subject of this appeal were allegedly confirmed approximately 16 days to 4 months after the alleged oral contract date. While defendants contend they did not receive the alleged confirmations on the dates maintained by plaintiff, for purposes of this appeal, defendants allow us to assume that they received the confirmations as alleged by plaintiff.

¶ 6        Plaintiff filed its original complaint on August 4, 2008. After plaintiff amended the complaint twice, defendants filed a motion to dismiss plaintiff's fraud and negligent misrepresentation claims. The trial court granted defendants' motion, and plaintiff filed an interlocutory appeal. Plaintiff amended its complaint for a third time, and on November 6, 2009, a fourth time. Counts I and II are for breach of various grain contracts. Count III is a fraud count, and count IV is a negligent misrepresentation count. Count V is for promissory estoppel. Ultimately, this court affirmed the trial court's dismissal of the fraud and negligent misrepresentation claims in a Rule 23 order (*Irvington Elevator Co. v. Heser*, No. 5-09-0328 (2010) (unpublished order under Supreme Court Rule 23), so those counts are not part of this appeal.

¶ 7        Plaintiff filed a motion for summary judgment on defendants' statute of frauds affirmative defense. The trial court denied plaintiff's motion on March 8, 2010, finding that there were issues of material fact which precluded entry of summary judgment. On January 3, 2011, defendants filed a motion for summary judgment on their statute of frauds affirmative defense. After a hearing, the trial court granted defendants' motion for summary judgment, finding the previous trial judge's ruling on the matter erroneous as a matter of law. The trial court found that as a matter of law the written confirmations sent by plaintiff were unreasonable. The trial court's order is silent as to whether summary judgment was granted with respect to plaintiff's breach of contract claim and its promissory estoppel claim. Plaintiff requested clarification, but none was given. Plaintiff filed a timely notice of appeal.

¶ 8                                   ANALYSIS

¶ 9        The issue we are asked to address is whether the trial court erred in granting summary

judgment in favor of defendants. Plaintiff contends the trial court erred in granting summary judgment in favor of defendants on their statute of frauds defense because the record shows defendants placed substantial orders for the delivery of grain, plaintiff hedged in reliance on these orders, and plaintiff delivered confirmation statements within a reasonable time after the parties reached an oral agreement, consistent with the practice between the parties. Plaintiff insists that to allow defendants to escape their commitments on summary judgment is contrary to the law. Defendants respond that the confirmations are unreasonable in time as a matter of law due to the volatility in the grain market, and, thus, the trial court did not err in entering summary judgment in defendants' favor. After careful consideration, we agree with plaintiff.

¶ 10    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). Review of an entry of summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). Although summary judgment is an efficient and useful aid in the expeditious disposition of a lawsuit, it is a drastic measure that should only be employed if the right of the moving party is clear and free from doubt. *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 31, 826 N.E.2d 1111, 1124 (2005). A movant may only be granted summary judgment when all the pleadings, discovery materials, admissions, and permissible inferences, when analyzed in the light most favorable to the nonmoving party, so overwhelmingly favor the movant that no fair-minded individual could dispute the movant's right to a judgment in his or her favor. *Wysocki v. Bedrosian*, 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344 (1984). With a summary judgment motion, the trial court does not decide a question of fact, but rather determines whether a question of fact exists. Therefore, a court cannot make credibility determinations or weigh evidence in deciding a summary judgment motion. *AYH Holdings, Inc.*, 357 Ill. App. 3d at 31, 826 N.E.2d at 1124. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995).

¶ 11    Because the parties were engaged in grain merchandising, the Uniform Commercial Code (Code) (810 ILCS 5/1-101 to 13-103 (West 2006)) governs this transaction. *Sierens v. Clausen*, 60 Ill. 2d 585, 328 N.E.2d 559 (1975). Section 2-201 of the Code provides in pertinent part as follows:

"Formal requirements; Statute of Frauds. (1) Except as otherwise provided in this Section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason

-4-

to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received." 810 ILCS 5/2-201(1), (2) (West 2006).

Reasonable time is defined by section 1-204 of the Code as follows:

"(1) Whenever this Act requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.

(2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." 810 ILCS 5/1-204(1), (2) (West 2006).

The prior course of dealing between the parties and usage of trade are also factors to be taken into consideration. Section 1-205 of the Code explains as follows:

"Course of Dealing and Usage of Trade. (1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement." 810 ILCS 5/1-205(1), (2), (3) (West 2006).

In the instant case, the parties dispute their course of dealing concerning their past business practices and plaintiff's delivery of confirmation statements on oral contracts. Defendants deny any prior course of dealing with plaintiff on hedge-to-arrive contracts despite a plethora of evidence to the contrary.

¶ 12    The record is clear that the parties have a long history of doing business together. In an affidavit, Clark Schnitker, the grain merchandiser for plaintiff for more than 25 years, testified that he has been doing business on behalf of plaintiff with defendants for approximately 20 years, and during that time, Bobby has been the primary person responsible for selling defendants' grain to plaintiff through several different types of grain contracts, including price-later contracts, forward contracts, and hedge-to-arrive contracts. Since 2006, Bobby was the only person responsible for selling defendants' grain to plaintiff via hedge-to-arrive contracts. Bobby would call and negotiate a grain contract, and then Schnitker would enter all of the information into the system, such as the type and quantity of grain to be delivered, the date the contract was formed, the date the grain was to be delivered, and the price per bushel, not including any basis adjustments that plaintiff agreed to pay. According to Schnitker, it was defendants' standard practice with plaintiff on the hedge-to-arrive contracts "to either price (by calling [plaintiff] to lock in a basis and a delivery location) or roll (pay a per-bushel fee to postpone delivery of the grain another month) within a month or two of the delivery date in the contract." After defendants delivered the grain, it was

standard practice for Bobby or Andy to explain how they wanted payment split among defendants.

¶ 13    Schnitker said that at the request of Bobby, he hand-delivered all grain settlement checks for each of defendants to Bobby's address. Furthermore, it has been Schnitker's standard practice to deliver confirmation statements to defendants "well in advance (usually at least two months) of the time when they have to decide whether to set the basis for a particular contract or to roll that contract." This occurred for each of the confirmation statements Schnitker delivered with respect to the contracts for which defendants filed a motion for summary judgment. Oftentimes, confirmation statements were hand-delivered along with checks, but sometimes confirmation statements were delivered without any grain settlement checks. He hand-delivered the confirmation statements rather than mailed them to ensure that defendants received them and because Bobby's house is just down the street from his own house.

¶ 14    The date on which Schnitker hand-delivered a confirmation statement is contained in the top left corner of the confirmation statement or on a cover page attached to the confirmation statement. Schnitker said none of defendants complained to him or objected to any of the confirmation statements hand-delivered to Bobby. On the contrary, from time to time Bobby would call Schnitker after a confirmation statement was delivered to discuss options for delivering the grain, rolling the contract, or setting the basis. The record contains scale tickets showing that defendants fully performed on prior hedge-to-arrive contracts that were entered into between the parties.

¶ 15    Defendants timely priced and performed on numerous contracts until the instant dispute occurred in approximately July 2008, when grain prices spiked to historic highs. It is plaintiff's position that in the years prior to the dispute the parties established a "common basis of understanding" with regard to the confirmation statements that were reasonable and acceptable, and, therefore, the trial court was wrong to enter summary judgment on such an unsettled record. The instant case is particularly intriguing because plaintiff's employee, Mr. Schnitker, is defendants' cousin and they had been doing business together for over 20 years.

¶ 16    On the other hand, defendants rely on several cases, including *Ozier v. Haines*, 411 Ill. 160, 103 N.E.2d 485 (1952). The trial court relied heavily on *Ozier* in its order granting summary judgment in favor of defendants. However, *Ozier* predates enactment of the Code, and the trial court's and defendants' reliance thereon is misplaced. Defendants also rely on two other cases, *Bureau Service Co. v. King*, 308 Ill. App. 3d 835, 721 N.E.2d 159 (1999), which held that a delay of over eight months in sending confirmatory memoranda was unreasonable, and *Byington v. Department of Agriculture*, 327 Ill. App. 3d 726, 764 N.E.2d 576 (2002), which held that confirmations of oral future delivery contracts that were received seven months after the date of the alleged contract were unreasonable as a matter of law. Both of these cases are distinguishable from the instant case.

¶ 17    First, the contracts that are subject to this appeal were allegedly confirmed approximately 16 days to 4 months after the alleged contract date, far less than the 7 or 8 months in the cases relied upon by defendants. While the trial court was swayed by decisions of sister states relied upon by *Bureau Service*, which held that written confirmations sent 25 days (*Cargill,*

*Inc. v. Stafford*, 553 F.2d 1222 (10th Cir. 1977)) and 12 days (*Lish v. Compton*, 547 P.2d 223 (Utah 1976)) after the contract date were unreasonable (*Bureau Service*, 308 Ill. App. 3d at 839, 721 N.E.2d at 161-62), we point out that these cases are not controlling and refuse to adhere to a bright-line test. By its very nature, the meaning of the phrase "within a reasonable time" connotes flexibility.

¶ 18 Second, the contracts in issue in *Bureau Service* were different because they established a final price, whereas the hedge-to-arrive contracts here in question do not establish a final price until a time in the future. Third, the cases relied upon by defendants specifically examined custom and practice as well as the parties' usual practice.

¶ 19 In *Bureau Service*, the court specifically stated:

"[W]e are further persuaded by the affidavits of two local grain dealers, who if called to testify would have testified that it was the custom and practice of grain dealers in the area to send confirmatory memoranda regarding oral contracts for grain sales within four to seven days of the oral contract." *Bureau Service*, 308 Ill. App. 3d at 840, 721 N.E.2d at 162.

*Byington* examined the grain elevator's "usual practice" and found that it typically hand-delivered confirmation statements about four weeks after the contract date. *Byington*, 327 Ill. App. 3d at 733, 764 N.E.2d at 582. Thus, rather than establishing a bright-line rule that a seven- or eight-month delay in delivering confirmation statements makes the oral contracts unenforceable, these cases establish that the custom and practice of local grain dealers and the course of dealing between the parties are relevant.

¶ 20 In the instant case, the parties' course of dealing is highly relevant. It is not unreasonable to assume that one might do business differently when it involves a cousin calling to sell his grain. While Bobby initially refused to even admit that he placed calls to plaintiff to discuss grain contracts, defendants' own expert, Michael Sykuta, specifically stated with regard to this case that it was his understanding "an order was placed, but the order was not confirmed. So there was no final agreement." Furthermore, Sykuta admitted that defendants sold the grain that was the subject of the hedge-to-arrive contracts at a price that was much better than what they would have received under the hedge-to-arrive contracts negotiated with plaintiff. According to plaintiff, defendants denied the existence of hedge-to-arrive contracts with plaintiff and resold the grain on another futures contract, giving defendants approximately $1 million in profits and forcing plaintiff to cover defendants' unperformed contracts and lose hundreds of thousands of dollars.

¶ 21 While defendants spent a substantial amount of time trying to convince us that there is a significant difference between confirmation of a contract and formation of a contract, we cannot ignore the long history of prior dealings between these parties, including numerous instances in which oral contracts were honored even though confirmations were sent months later. It is also important to note that many of the contracts could not even be priced, much less performed, for two years after they were orally agreed upon by the parties. In entering summary judgment in favor of defendants the trial court looked at only the date the contract was entered and the date Clark Schnitker allegedly delivered the initial confirmation statement to Bobby at his home. The circuit court ruled as a matter of law that plaintiff's

confirmations were not sent within a reasonable time.

¶ 22   Defendants insist plaintiff's confirmation statements were not sent in a timely manner pursuant to industry standards; however, Trent Hurley, a grain marketer with 20 years of experience, provided testimony via affidavit that the timing of plaintiff's confirmation statements to defendant was reasonable. This alone is enough to show there is a factual dispute that precludes entry of summary judgment. Accordingly, the trial court's analysis was incorrect.

¶ 23   The crux of this case is what is reasonable under the circumstances, and that is a question of fact for the trier of fact, not a question of law. Section 2-201(2) of the Code requires only that a confirmation statement be delivered "within a reasonable time." 810 ILCS 5/2-201(2) (West 2006). This involves a fact-intensive inquiry into a number of factors the Code recognizes, including course of dealing and usage of trade. Pursuant to section 1-205 of the Code, the parties' prior course dealings are highly relevant but were completely ignored by the trial court. After reviewing the pleadings, discovery materials, affidavits, admissions, and permissible inferences and analyzing them in the light most favorable to plaintiff, it is clear that reasonable minds could disagree as to whether defendants assented to the timing and the method of plaintiff's delivery of confirmation statements on the parties' oral contracts. Accordingly, we find the trial court erred in entering summary judgment in defendants' favor.

¶ 24   We need not address the promissory estoppel claim at this time since the trial court's order is silent as to this claim. On remand, all remaining counts, I, II, and V, should be considered.

¶ 25   For the foregoing reasons, the order of the circuit court of Marion County entering summary judgment in favor of defendants is reversed and remanded for further proceedings consistent with this opinion.

¶ 26   Reversed and remanded with directions.